ORA MAY ROZZELL FEAR ET AL., APPELLANTS, v. EBONY PAINT MFG. CO., EMPLOYER, TRAVELERS INSURANCE COMPANY, INSURER, RESPONDENTS.—181 S. W. (2d) 559.

Kansas City Court of Appeals. June 5, 1944.

562

■■■■■■■■■■■■■■■■
■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■

*Leo P. McShane, John W. Franciscus* and *Sam Mandell* for appellants.

*C. I. Frieze, John A. McGuire* and *Mosman, Rogers, Bell & Conrad* for respondents.

BLAND, P. J.—This is an appeal from a judgment of the circuit court affirming an award of the Workmen's Compensation Commission. The award was in favor of the claimants, but feeling that it was not sufficient in amount, they have appealed.

The facts show that Richard Eugene Rozzell, who lacked approximately one month of being twenty-one years of age, met with an accidental death on June 1, 1942, while painting the inside of a large water tank standing on a high elevated structure at the plant of the Cudahay Packing Company, in Kansas City, Kansas. The tank had a capacity of 100,000 gallons. It was twenty-two feet in diameter, forty-five feet high, and stood on a structure 185 feet high. The claimants are the mother of deceased · and his minor brothers and sisters. The defendants filed an amended answer to claimants' amended claim, denying that the deceased was an employee of the Ebony Paint Manufacturing Company or, that the claimants were, in any way, dependent upon deceased.

The facts further show that the Ebony Paint Manufacturing Company (hereinafter referred to as the Manufacturing Company) is a paint manufacturer, located in this State. It occasionally takes contracts to paint and scrape elevated structures, using its products for such purposes. Its operations come within the Workmen's Compensation Act of Missouri. The Travelers Insurance Company is its insurance carrier. On or about April 23, 1942, the Manufacturing Company contracted with the Cudahay Packing Company, to scrape and paint both the inside and the outside of the tank in question and its supporting metal structure. The Manufacturing Company then had in its employ one Paul and Charles Stevenson, brothers, who did various work for it. When Paul Stevenson worked at his regular job for the Manufacturing Company, as a roofer, he would be paid sixty cents per hour. When the Stevenson brothers worked for the Manufacturing Company as high painters, that is, painting water towers and structural steel, they usually did so on a contract basis. In this instance they agreed to do the labor of scraping and painting the tower, including the tank, for $218. The Manufacturing Company was to receive a larger sum from the Cudahay Packing Company for the entire job.

Paul Stevenson testified that he and his brother, Charles, started on the Cudahay job in the latter part of May, 1942; that Charles left when the job was about one-fifth completed. Paul Stevenson needed help. The secretary of the Manufacturing Company insisted on two men, at least, being on the job for safety reasons. The secretary told Paul Stevenson to hire some one else to take the place of his brother, and the latter employed Rozzell, the deceased, to help him on the job, employing him in this State. Rozzell had a small truck which he used in taking materials from the Manufacturing Company's plant, in this City, to the Cudahay job. Rozzell was hired the last week in May and he worked parts of three days in that month painting the inside of the tank. The paint used on the job had a tar base which was thinned with naphtha. It was impossible for the workmen to work on the inside of the tank for more than four hours per day on account of the fumes emanating from the paint and confined in the tank, there being no provision made for forcing fresh air into the tank. The weather was hot and in hot weather the fumes were "pretty bad".

Paul Stevenson testified that four hours would not constitute a day's work on the outside of the tank but was as many hours as could be put in on any one day on the inside; that Rozzell worked three full four-hour days on the inside of the tank, and had worked about forty-five minutes on the fourth day, when his death occurred. At that time Paul Stevenson and Rozzell had entered the tank and were working down near the bottom and had been there about forty-five minutes when Paul Stevenson became unconscious from the fumes. That is the last he remembered. Rozzell was dead when removed from the tank.

There is a dispute in the testimony as to the amount of wages that deceased earned, and was paid, during the time he worked in the tank. Claimants insist that he was paid $15 and defendants $12. The time book of the Manufacturing Company, on a page headed "Paul Stevenson" under date of "5/29/42", appears "Stevenson $25", and following that immediately appears "Richard J. Rozzell, 3 days, $12." A further notation appears on the page under date of 6/11 "Rozzell, $3.00".

After the death of Rozzell the secretary of the Manufacturing Company paid the mother of deceased $3. Claimants insist that all of this shows that deceased received $15 for his work. However, the secretary of the Manufacturing Company testified that he issued one check to Paul Stevenson of which "$12 was for the payment to Richard Rozzell for the work he did during that week"; that he did not know the rate of deceased's pay; that the money was turned over to Paul Stevenson apparently because Stevenson told the witness that $12 was coming to the deceased.

Stevenson testified that he received the money from the Manufacturing Company but that he paid Rozzell only $9; that the secretary gave $3 to deceased's mother. The secretary testified that he paid deceased's

mother this $3 on June 11th on the authorization of Paul Stevenson: The Manufacturing Company made a report to the Missouri Unemployment Commission, in which it stated that Rozzell was paid $15; that the date of his separation from its employ was 6/1/42.

It appears that the defendants took a statement from the claimant, Ora May Rozzell Fear and, upon cross-examination by the defendants, she was asked if she did not say in this statement, to the effect, that when deceased was·employed Paul Stevenson told him that he would pay him $1 per hour and, whether she stated in the statement, that Stevenson came to her house "to pay for five of these hours and gave Richard (deceased) ·$5 in cash". She answered in the·affirmative.

It appears that Paul Stevenson filed a claim before the Workmen's Compensation Commission against the Manufacturing Company. The Company filed a report in that case, stating that he was a painter employed by it "painting inside water tank". It also stated that he was a "piece" worker, and not a "time" worker "with a 5-day week"; that his daily wage was $8.

The secretary of the Manufacturing Company testified that he stated, in the report, that Paul Stevenson's wage was $8, but the witness further testified that, for that compensation, Stevenson would work eight hours.

Claimants' witness, Schwartz, testified that he was the business agent for the Painters District Council, American Federation of Labor, in the Kansas City and the metropolitan area including Kansas City, Kansas, and that the prevailing wage scale generally paid to painters working on elevated structures in both Kansas Cities on June 1, 1942, was $1.625 per hour or $13 for an eight-hour day and that eight hours was the prevailing working day. Schwartz further testified that the $13 wage per day for this type of work was paid to journeymen painters; that to become a journeyman painter, so as to qualify for the Union rate of pay, a person would have to work for three years; that for the first six months of these three years, during the preparatory course, the apprentice received twenty-five per cent of the journeyman's wage scale. He further testified: "Supposing a painter were out and got into a tank where the fumes were so bad that after an hour that he had to get out, suppose he waited and (an) hour or two for the fumes to clear up and then go back into the tank, would that man be on pay waiting for the fumes to leave the tank?" An objection to the question was overruled and the witness answered: "Yes, sir, his time would go steadily on. Q. . . . For how many hours a day? A. Eight hours".

Claimant, Ora May Rozzell Fear, testified that deceased "had never done this type of work before"; that deceased, for the last two or three years of his life, had worked for the NYA and on WPA; that "he had wrecked cars, repaired cars and truck work". Deceased's brother testified that, for approximately a year before the accident,

deceased and he had operated a truck together; that they had used this truck to haul trash and junk.

The case was tried before a Commissioner of the Workmen's Compensation Commission, and he found that deceased contributed all of his earnings to his mother in support of the family; that, therefore, the mother and the minor brothers and sisters, were entitled to the total death benefit. Respecting the rate of compensation the Commissioner found "from the evidence that the deceased employee worked three days for the instant employer for which he received $12, or a daily wage of $4: I further find that the class of work he was doing at the time of his death (painting elevated water tanks) was not carried on more than 200 days per year, therefore his average weekly wage is arrived at by multiplying $4 by 200 and dividing by 52, which is $15.38, 66-2/3 per cent of which is $10.26. Three hundred times $10.26 is $3078, the death benefit due under this award. [Lamker v. Schiller et al., 166 S. W. (2d) 246.]"

On review, by the full Commission, it made a similar award. Claimants appealed and, as before stated, the final award was affirmed by the circuit court.

After appealing to this court, claimants threatened to sue out an execution upon the award, and the defendants paid them the sum of $897.88. Claimants executed a receipt acknowledging "complete satisfaction of the award of the Compensation Commission to date, and as affirmed on appeal by the Circuit Court".

Defendants have filed a motion to dismiss the appeal for the reason that claimants, having received and accepted full satisfaction of the judgment, in part, may not thereafter prosecute an appeal thereon. It is the general rule that a litigant who has voluntarily and with knowledge of all of the material facts accepted the benefits of an order, decree or judgment of a court, cannot afterwards take or prosecute an appeal to reverse the same. However, there are exceptions to this rule as when "it is possible for the appellant to obtain a more favorable judgment in the appellate court without the risk of a less favorable judgment from a new trial of the whole case there or in the lower court, then the acceptance of what the judgment gives him is not inconsistent with an appeal for the sole purpose of securing, without retrial of the whole case, a decision more advantageous to him". [2 Am. Juris., pp. 977, 978.]

"Acceptance of an amount to which the acceptee is entitled in any event does not estop him from appealing from or bringing error to the judgment or decree ordering its payment. The rule that a party cannot maintain an appeal or writ of error to reverse a judgment or decree after he has accepted payment of the same in whole or in part has no application, as a rule, where appellant is shown to be so absolutely entitled to the sum collected or accepted that reversal of the judgment or decree will not affect his right to it, as in the case of the collection

of an admitted or uncontroverted part of his demand, and in other like cases, as where his appeal is to establish his claim to something additional or to a greater amount." [4 C. J. S., p. 418.]

"However, there is a well-recognized exception to this rule, that is, one who accepts payment after judgment of the items which were never in contest, is not debarred from appealing." [Johnson v. Johnson Motor Co. et al., 98 S. W. (2d) 146, 148. See, also, Central States Life Ins. Co. v. Lewin, 115 S. W. (2d) 801.]

Claimants, in answer to defendants' motion to dismiss, state that they seek only to have the amount of their recovery increased and that no action of this court in bringing about that end can result in reducing the recovery already awarded them.

We can not increase the recovery ourselves, or direct the Commission to do so, unless there are sufficient *conceded* facts in the record justifying that action on our part. [Kristanik v. Chev. Motor Co., 70 S. W. (2d) 890.]

In order to determine this question it is necessary to take up the theory of the respective parties relative to this case. Under the provisions of Section 3709, Revised Statutes Missouri, 1939, the death benefit, under the Compensation Act, is 300 times 66-2/3 percent of the employee's average weekly earnings as calculated and determined under the provisions of Section 3710, Revised Statutes Missouri, 1939. Section 3710 provides:

"The basis for computing the compensation provided for in this chapter shall be as follows:

"(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages, or earnings if in the employment of the same employer continuously during the year next preceding the injury.

"(b) Employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the accident uninterrupted by absence from work due to illness or any other unavoidable cause.

"(c) If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and the same location (or if that be impracticable, of neighboring employments of the same kind) have earned during such period.

"(d) As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as 300 times the average daily earnings in such computation.

"(e) As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, such number, if the annual earnings are not otherwise determinable,

shall be used instead of 300 as a basis for computing the annual earnings: *Provided*: the minimum number of days which shall be so used the basis of the year's work shall be not less than 200.

"(f) In the case of injured employees who earn either no wage or less than the earnings of adult day laborers in the line of employment in that locality, the yearly wage shall be reckoned according to the average annual earnings of adults of the same class in the same (or if that be impracticable then of neighboring) employments."

It is conceded that the claim comes within the provisions of paragraph (e) relating to the number of days to be used as the basis of the year's work which number shall not be less than 200. Claimants insist that this claim comes, also, within the provisions of paragraph (f). Claimants say that deceased was a minor, earning less than the earnings of an adult laborer doing work of the kind in which he was engaged and, therefore, his yearly average wage should be recokoned according to the yearly average wage of adults in the same employment; that, as Schwartz testified that the daily wage of persons in the same employment, was $13 "that the wage rate to be used in computing compensation due for his death, is $13 per day times 200 days per year, a total of $2600. This divided by fifty-two gives an average weekly wage of $50 to be used in figuring the death benefit due". On this basis claimants insist that they are entitled to an award of $10,000.

Defendants insist that the case comes under paragraphs (d) and (e), and that the claim does not come within the provisions of paragraphs (c) or (f); that under these paragraphs the earnings are to be computed according to the earnings of persons or adults "of the same class"; that deceased, never having worked as a painter before, could not be classified as to *status,* and that the Commission properly made an award by a practical application of paragraphs (d) and (e). [See Lamker v. Schiller, *supra.*]

Claimants insist that the words "in the same class" used in the statute, do not refer to *status* or experience, but to the character or kind of work being performed by the employee at the time of the accident. On this point see Johnson v. Kruckemeyer, 29 S. W. (2d) 730.

Assuming claimants' contention to be correct, and that the claim does come within paragraph (f), we would not be justified, in saying, as a matter of law that the wage rate to be used in computing deceased's compensation, is $13 per day.

The case was tried before the Commission by the defendants on the theory that paragraphs (c) and (f) are not applicable, and the Commission, in effect, so found and, consequently, has never made any finding upon the theory advanced by claimants. It is true, that Schwartz testified that the prevailing wage generally paid to employees doing this kind of work was $1.625 per hour or $13 for an eight-hour day. However, there is evidence tending to show that in the character of work that deceased was doing when he met his death, a work day

consisted of four hours. Therefore, it is not conceded that the work day consisted of eight hours. Consequently, it is improper to apply the wage rate of $13 per day. It is true, Schwartz said that, even though a man could not work eight hours straight on a job of this kind, and that he would have to rest between times, nevertheless, the work day was eight hours. This testimony is in conflict with other testimony that this was a four-hour day job; that a workman could not stay on this character of work for more than four hours in any one day. If we took Schwartz's testimony as true that the prevailing rate of pay was $1.625 per hour on this character of work, and assume that four hours constituted a work day, it would follow that the wage rate would be $6.50 per day. Claimants have not indicated that they are willing to accept compensation based upon this figure.

There is no conclusive admission in the record that Paul Stevenson's rate of pay was $8 per day. It is true that there was a report introduced in this case, made in another case, to that effect, but the secretary of the Manufacturing Company stated that this report was based on the theory that Paul Stevenson worked eight hours. The admissions contained in the report are not conclusively binding on the Manufacturing Company. In any event, the annual earnings of Paul Stevenson, alone, cannot be used as a basis for a compensative fixing of the earning capacity of deceased. [Werner v. Pioneer Cooperage Co., 155 S. W. (2d) 319, 322.] So claimants' contention that the average annual earnings of adults in this kind of work should be based on an eight-hour day, is without merit. Neither does section 10166, Revised Statutes Missouri 1939, fixing eight hours as a legal day's work in this State, have any application to the facts. However, we might say that that section expressly states that nothing therein "shall be so construed as to prevent parties in any contract for work, services or labor from agreeing upon a longer or shorter time".

However, claimants contend that if they are not entitled to compensation based upon paragraph (f) and that the amount of deceased's daily pay, alone, applies, then they are entitled to have considered a daily wage of not less than $8. In this connection, they point to testimony, to the effect, that Stevenson told deceased that he was to be paid $1 per hour and claimants say, that an eight-hour day being a standard working day and, as the secretary of the Manufacturing Company, testified that he considered eight hours a day's work, and that the statute provides for an eight-hour working day, it follows that $8 was the daily wage rate which, multiplied by 200, gives $1600, annual earnings, divided by fifty-two, or an average weekly wage of $30.75.

There was evidence tending to show that deceased was to receive $1 per hour which made his wage $4 for a four-hour day. The record does not, conclusively, show, as claimants contend, that he received $15 for three days' work. It was within the province of the Commission to find that he received $12, and the Commission so found.

What he was paid is certainly some evidence of what the agreement was as to his rate of pay. As before stated, an eight-hour day is not to be applied necessarily to this case.

Assuming, as claimants contend, that paragraphs (e) or (f) applies, still they are not entitled, as a matter of law, to an award in either of the sums they claim; and, assuming that the Commission tried the case on the wrong theory, the only action that we could take would be to reverse and remand the cause to the Commission for further hearing. In that event the whole case would be open for retrial. [Brocco v. May Dept. Stores, 55 S. W. (2d) 322.] Our authority in remanding a case is limited by statute, section 3732, Revised Statutes Missouri, 1939. [See, also, Brocco v. May Dept. Stores, *supra,* l. c. 325.]

At the last trial before the Commission the question of total dependency was seriously contested, as well as the question of the daily wage upon which the compensation award was to be made. At another trial it would be within the province of the Commission to find that the claimants were not entitled to any award.

It might be that we could make an award based upon such of the evidence that is conceded, provided that the claimants had indicated that they are willing to take the amount so found upon such a computation. However, claimants have not indicated that they would take any sum other than that stated in their brief, that is, either an award based upon an average weekly wage of $50 or $30.75. If the testimony of Schwartz, to the effect that the prevailing wage scale generally paid painters doing this kind of work was $1.625 per hour, is to be accepted as true then, basing an award under paragraph (f), the evidence showing that four hours constituted a working day for this character of work, an award founded on an average weekly wage of $15 20/52 might be made. Assuming that such an award could be made, claimants have not indicated that an award based on any such figure would be accepted. Consequently, claimants, in effect, are contesting our right to make such an award, in that, they are claiming that they are entitled to an award greater in amount than such a computation would afford them.

However, it is doubtful whether any such award could be made, under the evidence, on the assumption that the facts upon which it would have to be based are conceded, although there was no evidence introduced by the defendants contrary to the testimony of Schwartz. [Connole v. East St. Louis & R. Ry. Co., 102 S. W. (2d) 581.] An examination of the record does not show that the testimony of Schwartz was conceded to be true. Neither the defendants, nor the Commission, thought that his testimony had any material bearing upon the case. The award was made upon other facts. There is sufficient evidence in the record to indicate that there may be some other wage scale, generally, applicable to painters in this kind of work in the Kansas

City territory and, even though the Commission, at another hearing, if one were ordered by us on the theory that paragraph (f) is applicable, should find that Schwartz's testimony was true, as to the Union scale, nevertheless, if there should be evidence of any other wage scale, the Commission would not be required to accept the Union wage scale, exclusively, as conclusive in the matter.

It thus seems apparent that, in considering the various phases of this case, we would not be justified in making an award in this case, or, in increasing the amount of the one made by the Commission.

Consequently, we are of the opinion that the general rule applies and claimants, having accepted the accrued portion of the award, they are estopped from prosecuting this appeal and it should be dismissed. We have examined the cases cited by claimants and find them not in point. The appeal is dismissed. *Cave, J.,* concurs; *Dew, J.,* not sitting.