STATE of Missouri, at the Relation and Use of BOLIVAR TELEPHONE COMPANY, a Corporation, Relator-Appellant,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri, and Tyre W. Burton, E. L. McClintock, D. D. McDonald, William Barton and Frank J. Iuen, As Members of Said Public Service Commission, Respondents.

No. 48869.

Supreme Court of Missouri.

Division No. 2.

April 9, 1962.

Motion for Rehearing or to Transfer to Court en Banc Denied May 14, 1962.

Lilley, Cowan & Overfelt, Louis W. Cowan, Springfield, Elvin Douglas, Bolivar, for relator-appellant, Bolivar Tel. Co.

Glenn D. Evans, General Counsel, Thomas J. Downey, Asst. Gen. Counsel, Jefferson City, for respondents.

Richard C. Collins, Bolivar, of counsel.

BARRETT, Commissioner.

This is an appeal by the Bolivar Telephone Company from a judgment affirming an order of the Public Service Commission. The Bolivar Telephone Company is a private utility and under a certificate of public convenience and necessity furnishes telephone service to the city of Bolivar, population 3482 in 1950, and a surrounding rural area comprising approximately one third of Polk County. Its rates and the

territorial area served are shown by area maps on file with the commission. There were once two telephone companies in this area but in 1949 an ice storm all but destroyed the two systems and they were consolidated and the present company formed. Since 1957, largely through loans from the Rural Electrification Administration, the company has furnished dial-operated telephone service to its patrons. The company also has telephone exchanges at Morrisville and Pleasant Hope in the southern section of Polk County. In the eastern one third of Polk County, adjoining the area serviced by the Bolivar Telephone Company, are the communities of Halfway, Polk and Goodson. The villages of Halfway and Polk have customer-owned mutual telephone systems. Since abandoning its mutual service 17 years ago, the Goodson community has no telephone service of any kind. These three villages are the centers of agricultural areas and, of course, all have a community of interest with the county seat, Bolivar. The village of Goodson, 15 miles from Bolivar, consists of a store, a post office and a grade school. Halfway, 10 miles from Bolivar, has two stores, a filling station, two churches and a high school. Polk, 11 miles from Bolivar, has a grade school, a farmers' exchange, a garage and a filling station. Together these three districts comprise an area approximately 8 miles wide and 18 miles long, north and south. The population of these communities is not made to appear, it is estimated by counsel for the commission that there are approximately "500 potential" telephone subscribers for modern dial service in the area. In any event, 375 residents of these communities filed a complaint requesting the Public Service Commission to make an order compelling the Bolivar Telephone Company to file a revised "service area map" including these communities in its service boundaries, thereby furnishing dial telephone service to the villages of Polk, Halfway, Goodson and their surrounding rural areas at rates paid by Bolivar area residents. The commission made a detailed finding of facts, but the crux of the matter is that the commission has ordered the Bolivar Telephone Company to construct, at a cost of more than $300,000, exchanges at Polk and Halfway and to furnish nontoll dial telephone service to these three areas at rates to be fixed, upon application, by the commission after the installation and operation of the facilities.

The parties have briefed and argued the question whether the commission has jurisdiction and authority under the statutes, particularly Ch. 386, R.S.Mo. 1959, V.A.M.S., to compel a private utility to furnish telephone service to an area outside its certificated franchise area, or outside a territory not embraced "within its profession of service." The appellant company contends that the present order, in requiring service "beyond its voluntary undertaking and profession of service," is a taking of its property without due process and is therefore unconstitutional. It also contends that the order is based upon incorrect or unsupported findings of fact, or upon evidentiary matters not included in the record before the commission, and for that reason violates due process. The respondent makes an eloquent plea for the desirability of rural telephone service to "areas unable to support a (modern) telephone system" and consequently for the power and authority of the commission to compel the service. These are all very important problems indeed; they are problems of such magnitude that it is not desirable to consider them until a particular case compels the decision. It is doubtful that the appellant has in fact presented a question of constitutional law. State ex rel. Harline v. Public Service Commission, (Mo.) 332 S.W.2d 940; Southern Bell Telephone & Telegraph Co. v. Town of Calhoun, 4 Cir., 287 F. 381. The parties have cited no recent Missouri cases dealing with the commission's jurisdiction to compel a private utility to provide service outside its franchised or professed service areas. Cases, excluding railroad cases, dealing with the subject in a very limited general way are State ex rel. Ozark Power & Water Co. v. Public Service Commission, 287 Mo. 522, 229 S.W. 782; State ex rel. St. Louis County

Gas Co. v. Public Service Commission, 315 Mo. 312, 286 S.W. 84; State ex rel. Harline v. Public Service Commission, (Mo.App.) 343 S.W.2d 177; California Water & Telephone Co. v. Public Utilities Commission, 51 Cal.2d 478, 334 P.2d 887; Yucaipa Water Co. No. 1 v. Public Utilities Commission, 54 Cal.2d 823, 9 Cal.Rptr. 239, 357 P.2d 295; Nicoma Park Telephone Co. v. State, 198 Okl. 441, 180 P.2d 626. In 31 A.L.R. 333 there is an annotation: "Power of public service commission to require public utility to extend gas service into new territory," and in 56 A.L.R.2d 413, there is an annotation: "Duty of mutual association, nonprofit organization, or co-operative to furnish utilities services." Tempting as these problems may be their resoultion is not necessary to a disposition of this appeal and their determination is put aside for a case compelling the decision. The commission's order in this case is not based upon or supported by competent and substantial evidence in certain very important respects and for that reason alone this judgment must be reversed. State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 114, 220 S W.2d 61, 64; State ex rel. Hotel Continental v. Burton, (Mo.) 334 S.W.2d 75, 78.

As stated at the outset, the commission has ordered the Bolivar Telephone Company to immediately construct and operate two new toll-free dial telephone exchanges at Polk and Halfway, at a cost of over $300,-000. Profession of service aside, these are areas in which it has no franchise and in which it has not previously operated telephone exchanges or provided general telephone service. Further the order is that every ninety days the company submit progress reports and after the facilities have been placed in operation apply to the commission to the end that "fair and reasonable rates" may be established. But the company is "ordered to undertake and carry out the construction of facilities for providing dial telephone service to the Complainants herein on a non-toll basis throughout the area in which the Complainants reside and desire telephone service." The order part of the

commission's "Report and Order" does not indicate just how this rather extensive $300,000 project is to be financed, and, of course, it is not claimed that the commission has the control or direction of any funds that might be devoted to this purpose. There is no evidence in this record as to the value of the Bolivar Telephone Company or as to the nature, extent or availability of its financial resources. Although a railroad case and even though the extension was not required by the court, in the Oregon-Washington Railroad Company case the commission had found that the 185 mile extension would add 1.2 per cent to the railroad's track system at a cost of between $9,900,000 and $11,700,000 which the Union Pacific Railroad "is found to be in position to make them." Interstate Commerce Commission v. Oregon-Washington R. Co., 288 U.S. 14, 53 S.Ct. 266, 77 L.Ed. 588. Here, from its annual reports over the years (to the use of which the appellant objects), the commission, in its "finding of facts," sets forth the operating revenue of the company from 1955 to 1959 and that shows a total of $61,515.58 in 1955 and $120,236.76 in 1959. There is nothing in the record, however, as to what became of the operating revenue or how much of it represented profit. There is no evidence as to the indebtedness of the company, the only hint is in the finding of fact that in 1957 the company converted to dial operation "with funds borrowed from the Rural Electric Administration." In answer to the company's plea of difficulty in securing funds the commission, in its finding of facts, answers that the company had recently committed itself to the purchase of a telephone exchange in Stockton, in adjoining Cedar County, and that "All the expenditures so far have been made through loans from the Rural Electric Association." Thus in neither the finding of facts nor in the order is there any substantial evidence concerning the financial resources of the Bolivar Telephone Company or of its ability to initially finance this $300,000 project.

In its "Discussion and Conclusions" there is the statement, "We understand that the

purpose of the Rural Electric Association and the telephone service act (Chapter 31) makes the following provision for extending adequate telephone service to rural areas, such as that in which the Complainants reside." The commission then quotes in full 7 U.S.C.A. § 922, "Loans for rural telephone service." It is not necessary to quote that or other related statutes here, it is sufficient to say that, subject to certain specified terms and conditions, the Administrator, under the Secretary of Agriculture, is authorized "to make loans to persons now providing or who may hereafter provide telephone service in rural areas * * *." Among other admonitions the statute provides that "Loans under this section shall not be made unless the Administrator finds and certifies that in his judgment the security therefor is reasonably adequate and such loan will be repaid within the time agreed, * * *." It may be noted in passing that even REA organizations and other publicly owned or semi-publicly owned utility organizations have refused to extend their facilities and services, sometimes reasonably (Jordan v. Clarke-Washington Electric Membership Corp., 262 Ala. 581, 80 So.2d 527) and sometimes unreasonably. Annotation 56 A.L.R.2d 413. Perhaps in fairness to the commission it should be said that Bolivar Telephone Company employed an engineer to make a study of these areas, and his study was designed for possible use in applying for an REA loan. It was upon the basis of that study that the commission arrived at an approximate cost of $300,000. Then too, from its own sources and perhaps from what a large number of people may commonly know, the commission may have some knowledge of all these matters that is not revealed by this record. 73 C.J.S. Public Administrative Bodies and Procedures § 123, p. 442. In connection with the engineer's report, he found that there would be an estimated 497 five-year subscribers for telephone service and that the construction cost would approximate $605 per station. But aside from the company's lack of desire to incur an additional indebtedness of $300,000 and aside from the problem of the commission's authority to force the company to seek an REA loan, there is no evidence that a loan has been applied for or if sought that it would or should be approved. Thus, all other considerations aside, there is no evidence upon this record to support the ultimate effect of this order that the Bolivar Telephone Company is financially able or should be compelled to borrow $300,000, even at 2% interest, to finance this new or additional enterprise upon the mere faith of these indefinite terms and conditions. In this most important respect the order is unsupported by compelling substantive evidence and is therefore manifestly unreasonable. Accordingly the judgment of the circuit court is reversed and the cause remanded for the entry of an appropriate judgment.

BOHLING, and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.