Eugenius STEGEMAN,
Plaintiff-Respondent,

v.

ST. FRANCIS XAVIER PARISH and St.
Paul Fire & Marine Insurance Compa-
ny, Defendants-Appellants.

No. 62365.

Supreme Court of Missouri,
En Banc.

Feb. 9, 1981.

Raymond J. Flunker, Evans & Dixon, St. Louis, Mo., for defendants-appellants.

Thomas D. Wilson, St. Louis, Mo., for plaintiff-respondent.

SEILER, Judge.

This is a workmen's compensation case in which respondent was injured in his first day as a volunteer worker in the construction of a gymnasium for the St. Francis Xavier Parish school, located in Taos, Cole County, Missouri. There are two issues before this court: 1) whether respondent was an employee under the act and 2) whether the correct basis was used for determining compensation.

The referee who heard the claim denied compensation because he found that respondent was not an employee. Respondent made application for review by the Labor and Industrial Relations Commission. The Commission on its own motion remanded the case to the referee for additional evidence regarding the cost of medical treatment and the wage rate upon which benefits could be computed. The hearing was held.

Thereupon, the Commission, on review, reversed the referee's denial and awarded benefits. One of the three members of the Commission dissented. The Commission awarded respondent compensation for his healing period and for permanent partial disability at the maximum compensation rates. The amount of the award at issue totalled $7,186.74.

The case then went to the circuit court, which affirmed the Commission. On appeal, the Western District Court of Appeals reversed the Commission. It found that the Commission's findings of fact were insufficient to support its finding that respondent was an employee. The court further stated that the Commission improperly considered certain evidence in arriving at a calculation of a wage rate for respondent.

The case was then certified to this court pursuant to Mo. Const. art. V, § 10 by a dissenting judge. The judge found the majority opinion to be in conflict with cases which stand for the proposition that the findings of an administrative commission, board, etc. need not be made with the same formality as those in judicial proceedings, nor contain detailed summaries of the evidence. The dissenting judge further certified that the majority opinion, in ruling that a certain exhibit purporting to show a wage determination order was improperly received in evidence, was in conflict with *State v. Public Service Commission*, 357 S.W.2d 96 (Mo.1962), described as holding that a quasi-administrative body may resort to its "own sources" and take notice thereof. For reasons discussed below, we affirm in part and reverse in part.

Our review, of course, "is of the whole record ... in the light most favorable to the award of the Commission ..." determining "whether the Commission's findings, if supported by competent and substantial evidence, are contrary to the overwhelming weight of the evidence." *Miller v. Sleight & Hellmuth Ink Co.*, 436 S.W.2d 625, 627–28 (Mo.1969); *Wood v. Wagner Electric Corp.*, 355 Mo. 670, 197 S.W.2d 647, 649 (banc 1946); *Lawson v. Lawson*, 415 S.W.2d 313, 316 (Mo.App.1967).

A brief outline of the facts follows. St. Francis Xavier Parish purchased a 60 feet by 120 feet steel shell building to be used as a gymnasium for the parish school. The parish council concluded that the building

should be assembled and erected by a volunteer labor force furnished by the parishioners. The property committee—Frank Twehous and Leonard Sanning—hired at an hourly rate an experienced contractor and parishioner, Fred Verslues, to be the job leader and to show the volunteer laborers what to do. The building was to be erected during the summer months, ready for the start of school in September. Because there was no certainty as to the number of volunteers that would show up on any given day, two other men, Bill Bax, age 35, and Tom Verslues (Verslues' son) were hired to insure that some assistance would be available on a regular basis.[1] At times there were as many as twenty-five to thirty volunteers on the job.

On July 18, 1975, Twehous asked respondent, age 51, whose regular occupation was truck driver, to assist with the building construction the following day, Saturday, July 19, 1975. As far as Twehous was concerned, respondent was not experienced in the erection of steel buildings. Respondent neither requested pay nor was it offered. Nothing was said as to how many hours respondent would work.

On July 19, 1975, respondent appeared at the construction site and eventually began working with his next door neighbor, Stan Verslues (the foreman's brother). Tools which had been furnished to the church were in turn furnished respondent. Respondent spent the morning doing "ground work", consisting of laying out the fastening cross-members to be raised and joined to the vertical beams after they were set.

In the afternoon, upon returning from lunch, respondent asked Fred Verslues, the foreman who was working with the blueprints, what job needed to be done next. Verslues indicated that the "high work" of fastening the cross-beams to the verticals was necessary and pointed to wrenches and the church's ladder. During the task of tightening nuts and bolts, respondent accidentally fell from the ladder, injuring his back.

## I

### Respondent's Status as an Employee

■ Section 287.020 defines an employee as any "person in the service of any employer . . . under any contract of hire . . . or under any appointment." Respondent contends that he was an employee under appointment. In Missouri, an uncompensated worker is an employee by appointment if he is in the service of an employer and that employer exercises control, or has the right of control, over the worker. *Fielder v. Production Credit Association*, 429 S.W.2d 307 (Mo.App.1968); *Lawson v. Lawson*, 415 S.W.2d 313 (Mo.App.1967). It is necessary, therefore, to determine whether there was sufficient competent evidence before the Commission to establish whether the church had the right of control or did control the work of respondent.

The Commission's findings with regard to whether respondent was an employee were as follows:

"A careful review of the record reveals that employee Stegeman was appointed by St. Francis Xavier Parish to do work on a building being built by and for the Parish through authority delegated to its Property Committee consisting of members Frank Twehous and Leonard Sanning.

"On Tr. 46, employee Stegeman testified that Frank and Leonard negotiated most of the help and that he was asked by Frank. At Tr. 72, Frank Twehous, property committee chairman, said that he asked Stegeman to work on Saturday, July 19, 1975, and continuing on page 73 stated that the property committee had the sole power to hire individuals for the church and that they (the property committee) had talked to the church council

---

1. Fred Verslues was paid $506.00 for 92 hours at $5.50. His was the highest rate because he was the foreman and had the skill and experience. Bax was paid $229.50 for 51 hours at $4.50. Tom Verslues was paid $129.00 for 64½ hours at $2.00. Bax was paid more than Tom Verslues because Bax had a family and was out of work. All three men worked more hours than they turned in.

and the church council had authorized the committee to hire who they wanted. It thus becomes obvious that Stegeman was an employee by appointment and was performing a service beneficial to the church in that it was enjoying the economic advantage of not having to pay wages for labor. We hold that once we find the claimant is an employee by appointment, it is apparent that the entity making the appointment and receiving the services necessarily stands in the correlative relation of employer. (See *Lawson v. Lawson*, 415 S.W.2d 313).

"Furthermore the claimant proved by the overwhelming weight of the evidence that the church had the right of control. In that respect we are heavily influenced by the testimony of Frank Twehous and Leonard Sanning, who comprised the membership of the property committee."

■ The above findings, challenged by appellants as to their sufficiency, while by no means a model, set out the actual grounds of decision and make possible an intelligent judicial review. *Enriquez v. Chemical Sealing Corp.*, 409 S.W.2d 686, 690 (Mo.1966). The Commission need not state all the evidentiary facts upon which it made its ultimate findings. *Peterson v. Central Pattern Co.*, 562 S.W.2d 153, 156 (Mo.App. 1978).

In examining the testimony of Twehous and Sanning before the referee, we determine that the evidence referred to in the Commission's findings was sufficient to support the Commission's conclusion. We will summarize some of the more significant testimony: Twehous testified that the foreman was hired to direct the workers and to show them what to do. Twehous stated that he personally had the authority to run people off the job as a safety factor and that Verslues had actually asked people to leave the job or to change positions. Twehous testified that he had the authority to tell the workers what to do on the job and did give them orders. Sanning likewise testified that he, Verslues, and Twehous had the right to control a volunteer worker, to tell him what to do and how to do it.

When pressed what would happen if the volunteer refused, Sanning replied that that was his privilege. He then testified that if a man came to work there, the understanding was that he (the volunteer) would be under somebody. Somewhat on this point, Twehous testified that if a volunteer was not capable of doing the job he was asked to do, "[Y]ou can't demand it. You can't tell them to do anything except go home if they don't want to help." With regard to this latter testimony, we agree with the dissenting judge's assessment:

"It is completely understandable that a more genteel, subdued, tactful and less imperative approach was indicated in the case of directions or admonitions leveled at fellow church member volunteers or appointed employees on this construction job than would be indulged in the case of arm's length paid employees recruited from the common labor market, but that would not change the ultimate basic fact of control or right to control in order to properly accomplish the construction."

■ We therefore hold that the Commission's findings of fact were supported by substantial and competent evidence and affirm that portion of its award which permits respondent to recover workmen's compensation because he was an employee at the time of his accident.

II

Basis for Computing Compensation

The Commission, by correction order dated January 19, 1978 awarded respondent, inter alia, $2,686.74 for 28²⁄₇ weeks healing period at the maximum compensation rate of $95.00 per week and $4,500.00 for 60 weeks permanent partial disability at the maximum compensation rate of $75.00 per week. *See* § 287.160, § 287.180 and § 287.190 RSMo 1975 Supp. The second issue before this court is whether such an award was based on evidence properly before the Commission. At the second hearing before the referee to hear additional evidence regarding respondent's applicable wage rate, claimant's Exhibit No. 2 was offered into

evidence but was not admitted when the referee sustained appellants' objection. The exhibit before us is a photostatic copy (substituted by agreement for the original document offered in evidence) of a two page document entitled Wage Determination No. 22848A, Cole County, stamped "Filed with Secretary of State, JUL 29 1975". It purports to list building construction rates for Cole County for workers on an Intrusion Detection System on the Missouri National Guard Building & Grounds, Jefferson City, including laborers (building-common), semi-skilled. The schedule was issued July 10, 1975. It shows that such a laborer made $6.90 per hour and that structural iron workers made $8.975 an hour.[2]

As said, the exhibit was not admitted into evidence by the referee. The Commission sua sponte found the exhibit to be "an official document of this department, filed with the Secretary of State, and we take administrative notice of it." The dissenting judge found the Commission's action appropriate and cited § 536.070(6) RSMo 1978, which provides as follows:

"Agencies shall take official notice of all matters of which the courts take judicial notice. They may also take official notice of technical or scientific facts, not judicially cognizable, within their competence, if they notify the parties, either during a hearing or in writing before a hearing, or before findings are made after hearing of the facts of which they propose to take such notice and give the parties reasonable opportunity to contest such facts or otherwise show that it would not be proper for the agency to take such notice of them."

Appellants contend that § 536.070(6) does not apply to workmen's compensation cases. We have held that the review provisions of chapter 536 do not apply to review of workmen's compensation decisions, *Scott v. Wheelock Bros.*, 357 Mo. 480, 209 S.W.2d 149, 150 (banc 1948), but we have not passed on the present point.

We agree that § 536.070(6) does not apply to workmen's compensation cases. The system of a workmen's compensation commission with workmen's compensation referees, as it was first set up, § 3299 et seq., RSMo 1929, now embodied in a Division of Workmen's Compensation and a Labor and Industrial Relations Commission, § 287.010 et seq., RSMo 1978, is one which is more like a court than it is a regulatory agency. The Commission, like a court,

"is passive. It has no obligation to search for evidence which parties fail to present. A regulatory agency has an affirmative duty to carry out a program, to protect a public interest which frequently is otherwise unrepresented. When parties fail to produce needed facts, the regulatory agency typically must take the initiative in aggressively making its own factual investigation."

Davis Official Notice, 62 Harv.L.Rev. 537, 538 (1949).

Professor Davis points out further differences:

"Unlike a court, a regulatory agency employs staffs of specialists, wields independent powers of investigation, and accumulates vast storehouses of information about its specialized field. The scope of judicial notice has been molded largely on the basis of information readily available to a court . . . . Information to be noticed by one tribunal, the regulatory agency, should not depend upon facts available to another tribunal, the court."

*Id.* 538.

On this same general subject, A. Larson, Workmen's Compensation 15–337—15–338, § 79.90 (1976), points out that

"[T]he compensation commission while deciding controverted claims is as far toward the judical [sic] end of the spectrum as it is possible to go without being an outright court. Accordingly, investigatory procedures or rules of official notice that might be appropriate for a regulatory agency primarily concerned with im-

---

2. If this exhibit were in fact an original document, on file in the office of the secretary of state, a copy thereof could easily have been certified as provided by § 490.180, RSMo 1978 and made admissible in evidence, assuming its relevancy.

plementing some public policy while incidentally settling a dispute between particular parties may not be entirely appropriate for a compensation board."

■ We do not believe it is appropriate for the adjudicatory body in a workmen's compensation proceeding, which operates with parties before it in adversarial positions, the employee on one side and the employer-insurer on the other hand, to be taking official notice of facts not judicially cognizable, under the procedure set forth in § 536.070(6). This would be too much in the nature of the Commission's leaving its neutral position and helping one side or the other with evidence. We believe the Commission and its referees are limited to ascertaining the facts from the record presented by the parties and applying the workmen's compensation law to the facts. This, of course, does not mean the Commission cannot employ regular judicial notice when it is proper under the rules of evidence to do so. We therefore hold that Exhibit No. 2 was not admissible as something of which the Commission could take "official notice" under § 536.070(6), RSMo 1978.[3]

As the dissenting judge points out, there was other evidence as to wages. The Commission's findings in this regard read as follows:

"Father Flanagan was pastor of St. Francis Xavier Church. At Tr. 140, he stated that in case wages were paid to individuals for their labor the wages were based generally on the goodwill of the person who was doing the construction work. It was understood that it would be the lowest pay possible.

"He stated that the volunteers could, if they wished, have their services credited against their tithing.

"Fred Verslues, foreman, was paid $5.50 per hour. Bill Bax was paid $4.50 per hour. Tom Verslues, son of the foreman, was paid $2.00 per hour. However, as pointed out by Father Flanagan, these rates paid are in no way indicative of rates being paid to adults engaged in the same kind of employment.

". . . .

"We find the exhibit [referring to Exhibit No. 2] is a copy of a wage determination issued on July 10, 1975 by the Division of Labor Standards, a division of the Department of Labor and Industrial Relations, as required by chapter 290 of the Statutes of Missouri. We find it is an official document of this department, filed with the Secretary of State, and we take administrative notice of it. Giving it the consideration we think it deserves, we note it indicates the lowest basic hourly wage paid for building labor in Cole County, that of a common laborer, to be $6.90 per hour.

"We do not find it necessary to determine whether the claimant was doing work coming under the classification of ironworker, or laborer, as the rate indicated in Wage Determination # 22848A for the lowest of the two classifications, that of a common laborer at $6.90 per hour, would according to Section 287.-250(3) Revised Statutes of Missouri 1969 amply support a finding that the claimant is entitled to benefits based upon the maximum rate. To find otherwise would be to find that his services were worth less than $4.00 per hour which, based upon the testimony of Father Flanagan, would appear to be ridiculous."

Appellants are entitled to insist, as they do, that respondent's compensation rate be determined as required by the act.

"[T]he rule of liberal construction does not authorize the allowance of a claim which lacks some of the essential elements required by the act."

---

3. We do not agree that *State ex rel. Bolivar Telephone Company v. Public Service Company*, 357 S.W.2d 96 (Mo.1962), cited by the dissenting judge, would authorize admission of the exhibit. In that case the public service commission on the basis of an engineering study arrived at the approximate cost of two telephone exchanges. The opinion speculates that the commission may also have had some knowledge of these matters not revealed by the record, such as its own sources and "perhaps from what a large number of people may commonly know." The opinion does not endorse this as a method of proof of essential facts.

*Glazebrook v. Hazelwood School District,* 498 S.W.2d 823, 826 (Mo.App.1973).

Section 287.250, RSMo 1978 prescribes how compensation is computed. It has ten subsections.

> "[I]t is necessary to commence with the first subsection and then to descend in numerical order under the other subsections until the wage rate provision is found that applies to the particular facts of the case."

*Glazebrook, supra* at 826; *Cross v. Crabtree,* 364 S.W.2d 61, 67 (Mo.App.1962).

The Commission used § 287.250(3) as the method of determining respondent's compensation rate, but subsection 3 does not apply, as it has been construed "to apply to employees who accept employment which normally requires services for a full year and are then injured prior to the expiration of one year after they were employed." *Glazebrook, supra* at 827. Respondent's situation does not fit subsection 3. His expectations with regard to his volunteer work did not extend for a full year, and, of course, he worked less than a day before being injured. Additionally, there is no evidence in this case of annual earnings of other persons in the same class of work in that location or in neighboring employments of the same kind. Subsection 3 is not applicable.

The subsection which fits respondent is § 287.250(6). It deals with injured employees who receive no wages and reads as follows:

> "In the case of injured employees who earn either no wage or less than the earnings of adult day laborers in the line of employment in that locality, the yearly wage shall be reckoned according to the average annual earnings of adults of the same class in the same (or if that is impracticable then of neighboring) employments."

■ Since Exhibit No. 2 was improperly considered, the only other evidence referred to was the hourly wages paid to Fred Verslues, Bill Bax, and Tom Verslues. Subsection 6, the method to be used for those who earn no wage or earn less than adult day laborers in the same locality, calls for determining the yearly wage of the claimant "according to the average annual earnings of adults of the same class in the same (or if that is impracticable then of neighboring) employments." Respondent probably could be considered in the same class as Bill Bax, even though Bax was being paid an hourly wage and respondent was not. Both were doing common labor. One trouble with attempting to use Bax's rate of $4.50 per hour is that when the comparison method of computation of earning capacity under subsection 6 is used it has been held to require ascertainment of the annual earnings which adults—*i. e.,* more than one employee—in the same employment have earned. *Fear v. Ebony Paint Manufacturing Co.,* 238 Mo. App. 560, 181 S.W.2d 559, 564 (1944); *Werner v. Pioneer Cooperage Co.,* 155 S.W.2d 319, 322 (Mo.App.1941). There is no evidence in the record of the annual earnings of any adults in this case.

The Commission's award is affirmed except with respect to the amount of compensation, as to which it is reversed and the cause remanded to the circuit court with directions to remand to the Commission for further proceedings relative to determination of the amount of compensation consistent with this opinion.

RENDLEN, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., concurs in result.

DONNELLY, J., dissents in separate dissenting opinion filed.

WELLIVER, J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

DONNELLY, Judge, dissenting.

I respectfully dissent.

I have serious reservations as to whether the Labor and Industrial Relations Commission's findings of fact are sufficient to support its conclusion that respondent was an "employee" under the Worker's Compensation Act. In any event, I would reverse

because I believe the principal opinion in this case represents another "farfetched" application of the term "appointment" found in § 287.020, RSMo 1978. *See* 1C Larson, Workmen's Compensation Law, § 47.41(a), 8–261 (1980).