LAMBARD v SAGA FOOD SERVICE, INC

Docket Nos. 63115, 63160, 63232. Submitted February 3, 1983, at Detroit.—Decided May 11, 1983.

Plaintiff, Connie Lambard, the widow of Edward J. Lambard, sought death benefits from the decedent's former employers and those employers' workers' compensation carriers. A hearing referee found that the deceased did not sustain a work-related injury or disability and that his death was the result of an ordinary disease of life rather than an occupational disease. Thereafter, the Workers' Compensation Appeal Board (WCAB) reversed the referee's order, finding that the decedent's heart attacks and subsequent death were work related, and ordered payments to the plaintiff by defendant Saga Food Service, Inc. The WCAB also held that Saga should be reimbursed for 27.55% of its liability by defendant Cregar's Pickwick House and for 3.6% of its liability by defendant St. Clair Yacht Club. The defendants and their respective workers' compensation carriers each appeal by leave granted from the order by the WCAB. The appeals were consolidated by the Court of Appeals. *Held:*

1. The WCAB reached a proper legal conclusion in finding that the decedent was not an employee of the Greek Corner Restaurant. Although decedent did invest some of his money

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation § 552.

[2] 82 Am Jur 2d, Workmen's Compensation § 630.

[3, 13] 53 Am Jur 2d, Master and Servant § 2.

82 Am Jur 2d, Workmen's Compensation § 513.

[4] 81 Am Jur 2d, Workmen's Compensation § 34.

[5] 73 Am Jur 2d, Statutes §§ 145, 146.

[6] 73 Am Jur 2d, Statutes § 354.

[7] 81 Am Jur 2d, Workmen's Compensation § 89.

[8] 73 Am Jur 2d, Statutes § 352.

[9] 82 Am Jur 2d, Workmen's Compensation § 240.

[10] 73 Am Jur 2d, Statutes §§ 350, 351.

[11] 81 Am Jur 2d, Workmen's Compensation § 191.

82 Am Jur 2d, Workmen's Compensation §§ 520, 521.

[12] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

and lent his expertise to his son and two nephews there was no employer-employee relationship for workers' compensation purposes.

2. The WCAB did not apply the wrong standard in determining that the decedent's death was work related. The amendment of the relevant statute to make the requirements for compensability of heart and cardiovascular conditions more stringent was subsequent to decedent's death. The new standard is to be given prospective application.

3. The fact that decedent did not die until two months after his last day of work at Saga and the fact that there may have been other causes for decedent's demise do not alter the fact that the evidence was sufficient to show that the work conditions at Saga accelerated or aggravated decedent's arteriosclerosis and thus contributed to it.

4. The WCAB did not err in granting death benefits to plaintiff despite the fact that no evidence was presented to show that she was dependent upon decedent for support. At the time of the decision the law provided that a wife is conclusively presumed to be wholly dependent for support on a husband with whom she lives at the time of his death. The Supreme Court subsequently struck down as unconstitutional such conclusive presumption. The Supreme Court's decision should be applied to require proof of dependency only in those cases arising subsequent to the Supreme Court's decision, in cases pending before the WCAB at the time of the decision, and in cases already decided by the WCAB in which the parties raised the issue of the constitutionality of such presumption. Here, the defendants failed to raise the issue of the constitutionality of the conclusive presumption of dependency below.

5. The WCAB erred in apportioning to Cregar's and St. Clair a part of Saga's liability to the plaintiff since there was no evidence tending to indicate that decedent's employment with those two defendants contributed in any way to his stress.

Affirmed in part, reversed in part and remanded for entry of and order dismissing Cregar's and St. Clair and absolving them of any liability for Saga's payments to plaintiff.

1. WORKERS' COMPENSATION — APPEAL — FINDINGS OF FACT — CONSTITUTIONAL LAW.

Findings of fact in a workers' compensation proceeding are conclusive in the absence of fraud; the Court of Appeals reviews such findings only to determine whether there is any evidence to support them (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

2. WORKERS' COMPENSATION — APPEAL — INFERENCES.

A determination by the Workers' Compensation Appeal Board is open to review by the Court of Appeals where it involves a legal inference drawn from other facts.

3. WORKERS' COMPENSATION — EMPLOYMENT — ECONOMIC REALITIES TEST.

The existence of an employer-employee relationship for workers' compensation purposes is to be determined by the economic realities of the situation; the relevant factors of the economic reality test are control of a worker's duties, the payment of wages, the right to hire, fire and discipline, and the performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal.

4. WORKERS' COMPENSATION — PERSONAL INJURY — HEART AND CARDIOVASCULAR CONDITIONS — STATUTES — RETROACTIVITY.

The 1980 amendment of the workers' compensation statute defining "personal injury" to specifically address heart and cardiovascular conditions was designed to make the requirements for the compensability of such conditions more stringent; the amended statute changed existing substantive law and, as such, should be limited to prospective application (1980 PA 357; MCL 418.401[2][b]; MSA 17.237[401][2][b]).

5. STATUTES — JUDICIAL CONSTRUCTION.

The primary objective of judicial interpretation of a statute is to ascertain the intent of the Legislature.

6. STATUTES — RETROACTIVITY — REMEDIAL STATUTES.

A statute is generally applied only prospectively unless the Legislature expressly or impliedly indicates its intention to give it retroactive effect; an exception to this general rule is that remedial statutes, or statutes related to remedies or modes of procedure, which do not take away vested rights, but instead only operate in furtherance of a remedy or continuation of rights already existing, operate retroactively in the absence of language showing a contrary intent.

7. WORKERS' COMPENSATION — CONTROLLING LAW.

The law in effect at the time of injury generally controls an employee's or dependent's rights to workers' compensation benefits.

8. STATUTES — RETROACTIVITY — POSTPONEMENT OF EFFECTIVE DATE.

The Legislature's express postponement of the effective date of

part of an act is some evidence that the Legislature never intended that such part apply retroactively.

9. WORKERS' COMPENSATION — CAUSES OF DISABILITY.

Work or work conditions need not be the only cause of a workers' compensation claimant's work-related disability but need only be one of the causes of such disability.

10. STATUTES — CONSTITUTIONAL LAW — RETROACTIVITY.

Unconstitutional statutes are generally void *ab initio* and, therefore, decisions finding statutes to be unconstitutional are applied retroactively; however, the necessities of governmental administration may militate in favor of the limited retroactive application of decisions holding legislative acts unconstitutional.

11. CONSTITUTIONAL LAW — WORKERS' COMPENSATION — PRESUMPTION OF DEPENDENCY — RETROACTIVITY.

The Supreme Court's decision which struck down as unconstitutional the provisions of the workers' compensation statute providing that a wife is conclusively presumed to be wholly dependent for support on a husband with whom she lives at the time of his death should be accorded limited retroactivity to require proof of dependency only in those cases arising subsequent to such decision, in those cases pending before the Workers' Compensation Appeal Board at the time of the decision, and in cases already decided by the board in which the parties raised the issue of the constitutionality of the statute (MCL 418.331[1][a]; MSA 17.237[331][1][a]).

12. CONSTITUTIONAL LAW — PRESERVING QUESTION.

A constitutional issue is generally not preserved for appellate review where it was not raised at the trial level.

13. WORKERS' COMPENSATION — MULTIPLE EMPLOYERS — APPORTIONMENT.

There must be some evidence presented that an injured employee's employment with each of his several employers contributed to his work-related injury in order to justify the apportionment of liability for the payment of compensation benefits to each of the several employers pursuant to the statute relating thereto; it is not necessary, however, that the employee be subjected to identically disabling conditions in each employment (MCL 418.435; MSA 17.237[435]).

*Levenson, Disner, Ruby & Fruitman, P.C.* (by *Sydney L. Ruby),* for plaintiff.

*George E. Ganos,* for Saga Food Service, Inc., and Employers Mutual Liability Insurance Company.

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Martin L. Critchell),* for Cregar's Pickwick House and Liberty Mutual Insurance Company.

*Law Offices of Ronald R. Kefgen* (by *Patrick J. MacLean),* for St. Clair Yacht Club and Hartford Insurance Group.

Before: D. F. WALSH, P.J., and BEASLEY and T. R. THOMAS,* JJ.

PER CURIAM. Leave to appeal has been granted in this workers' compensation case involving three separate but consolidated claims of appeal. The appellants are former employers of plaintiff's deceased husband as well as those employers' workers' compensation carriers. Appellants appeal from an order of the Workers' Compensation Appeal Board (WCAB) reversing a referee's April 5, 1979, order, in which he found that the deceased did not sustain a work-related injury or disability and that his death was the result of an ordinary disease of life rather than an occupational disease. On February 12, 1982, the WCAB reversed the referee's order, finding that the decedent's death was work related, and ordered payments to plaintiff by defendant Saga Food Service, Inc. (Saga), at the rate of $107 per week plus funeral expenses of not more than $1,500. The WCAB also held that Saga should be reimbursed for 27.55% of its liability by

---

* Circuit judge, sitting on the Court of Appeals by assignment.

defendant Cregar's Pickwick House (Cregar's) and for 3.6% of its liability by defendant St. Clair Yacht Club (St. Clair).

Plaintiff testified at a hearing before the referee that her husband was born in 1920 and that he began working as a cook in 1944, an occupation which he held for the rest of his life. Defendant began work in 1960 or 1961 with Harding & Williams, a corporation that managed food services for the Burroughs Corporation. Saga acquired Harding & Williams in 1970 or 1971 and decedent stayed on as an employee until November 13, 1975. From the period beginning shortly after Saga acquired Harding & Williams until November of 1975, the decedent was head cook at Burroughs' Tireman Road facility and worked 5 a.m. to 1 p.m., five days per week.

The decedent also worked as a part-time short-order cook at Cregar's from October 27, 1962, to May 2, 1968. His hours were generally from 5 p.m. to 10 p.m., three or four nights per week. From August 15, 1971, until June of 1974, the decedent worked as a cook at St. Clair three or four nights a week, generally between 4 p.m. and 9 p.m.

Decedent suffered the first of his five heart attacks (diagnosed as myocardial infarctions) on March 8, 1972, while driving home from work. Decedent returned to work in August of 1972. Decedent suffered his next heart attack while dining out on October 24, 1974. Dr. Nelson Green inserted a pacemaker in decedent's chest and decedent returned to work in January of 1975. Decedent suffered his third heart attack in April of 1975 while at a hospital seeking treatment for an unrelated problem, returned to work in August and then suffered his fourth heart attack on November 14, 1975, while on his way to work. Dece-

dent died on January 17, 1976, while on disability leave from Saga after the fourth heart attack. Decedent died soon after suffering another heart attack while on his way to the Greek Corner Restaurant.

Under Chapter 4 of the Worker's Disability Compensation Act (the act), MCL 418.401 *et seq.;* MSA 17.237(401) *et seq.,* the act's occupational disease chapter, the total compensation due is recoverable from the employer who last employed the employee in the position to which the nature of the disease was due and in which the disease was contracted. MCL 418.435; MSA 17.237(435). Saga argues that, at the time of his death, decedent was employed by the Greek Corner, a restaurant started by his son, two nephews and himself, and that, therefore, the Greek Corner is liable for the payment of benefits to plaintiff.

Plaintiff testified that at the end of 1974 her husband began to make plans for retirement. Plaintiff also testified that decedent decided to retire after the November, 1975, heart attack but that he had not settled on a retirement date at the time of his death.

Decedent first consulted with his son and two nephews about opening a restaurant in February of 1975. Decedent put up 50% of the capital investment and received the same percentage of the corporation's shares of stock. In addition, decedent advised his son and nephews in the design and purchase of equipment and the layout of the floor plan, but remained at Saga during the planning stages. Decedent stayed at home after recovering from his November, 1975, heart attack and one of his nephews periodically checked in with him for advice. The restaurant opened on January 14, 1976, and the decedent spent three days at the

restaurant acting as a public relations man for a few hours each day. On January 17, 1976, decedent left his home on a cold morning to drive to the restaurant but suffered his fatal heart attack before he arrived. The restaurant was closed that day but decedent went there to check the cash register and to show the restaurant to his supervisor at Saga.

On these facts, the WCAB ruled that it could not find that decedent was an employee of the Greek Corner, although he did invest some of his money and lent his expertise. The board concluded that the Greek Corner was decedent's son's business and "that decedent was doing no more than would be expected of any devoted father helping a son to follow in his footsteps".

Findings of fact in a workers' compensation proceeding are conclusive in the absence of fraud. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861). Thus, we review such findings only to determine whether there is any evidence to support them. *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978).

The facts surrounding decedent's involvement with the Greek Corner are not in dispute. What is in dispute is the board's determination that, based on the facts, decedent was not an employee of the Greek Corner. Because this determination involved a legal inference drawn from other facts, it is open to review by this Court. *Stover v Midwest Tank & Fabrication Co, Inc,* 87 Mich App 452, 456-457; 275 NW2d 15 (1978), *lv den* 406 Mich 926 (1979).

The existence of an employer/employee relationship for workers' compensation purposes is to be determined by the economic realities of the situation. *Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976); *Kain v Michigan,* 109 Mich

App 290, 299; 311 NW2d 351 (1981), *lv den* 413 Mich 910 (1982). The relevant factors of the economic reality test are control of a worker's duties, payment of wages, right to hire, fire and discipline, and the performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Askew, supra,* pp 217-218.

Although decedent's activities may have been an integral part of the business, decedent's son and nephews did not control his duties. Instead, decedent put as much effort as he pleased into the restaurant. Decedent was paid no wage but instead appears to have helped his son and nephews to start them off well and to make money on his investment. Finally, decedent's son and nephews had no right to discipline decedent. Thus, the board reached the proper legal conclusion in finding that decedent was not an employee of the Greek Corner.

Saga also argues that the board applied the wrong standard in determining that the decedent's death was work related.

MCL 418.401(2)(b); MSA 17.237(401)(2)(b) provides in part:

" 'Personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. An ordinary disease of life to which the public is generally exposed outside of the employment is not compensable."

In 1980, the Legislature amended MCL 418.401(c); MSA 17.237(401)(c), effective January 1, 1982, to include after the sentence relating to

ordinary diseases[1] the following sentence: "Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or accelerated by the employment in a significant manner". 1980 PA 357, §§ 1, 3.

Prior to 1980 PA 357, the statute did not specifically address heart and cardiovascular situations. Thus, the pre-1982 standard for determining whether a heart condition is compensable under the act was a matter of case law. The leading case on the subject is *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 116; 274 NW2d 411 (1979), where the Court held:

"The workers' compensation law does not provide compensation for a person afflicted by an illness or disease not caused or aggravated by his work or working conditions. Nor is a different result required because debility has progressed to the point where the worker cannot work without pain or injury. Accordingly, compensation cannot be awarded because the worker may suffer heart damage which would be work-related if he continued to work. Unless the work has accelerated or aggravated the illness, disease or deterioration and, thus, contributed to it, or the work, coupled with the illness, disease or deterioration, in fact causes an injury, compensation is not payable.

"Arteriosclerosis is an ordinary disease of life which is not caused by work or aggravated by the stress of work. However, stress that would not adversely affect a person who does not have arteriosclerosis may cause a person who has that disease to have a heart attack."

See also *Miklik v Michigan Special Machine Co,* 415 Mich 364, 367-368; 329 NW2d 713 (1982).

Essentially the amendment of MCL 418.401(2)(b);

[1] The Legislature rearranged § 401 by 1981 PA 199, § 1, effective March 31, 1982, so that the personal injury definition of § 401(c) became § 401(2)(b).

MSA 17.237(401)(2)(b) added only the words "in a significant manner" to the *Kostamo* standard. Thus, the amendment was ostensibly designed to make the requirements for compensability of heart and cardiovascular conditions more stringent.

It is evident from their opinion that the board did not apply the new statutory standard. Whether the board erred in failing to apply the new standard depends on whether or not the statutory amendment is retroactive, as decedent's disease and death occurred well before the effective date of the amendment.

The primary object of judicial interpretation of statutes is to ascertain the intent of the Legislature. *Franks v White Pine Copper Division, Copper Range Co,* 122 Mich App 177, 183; 332 NW2d 447 (1982). The amendment in question was part of 1980 PA 357. Although this act was approved by the Legislature on December 30, 1980, the Legislature expressly postponed the effective date of the language regarding heart and cardiovascular conditions until January 1, 1982. 1980 PA 357, § 3. This postponement is some evidence that the Legislature never intended that the stricter standard apply retroactively. *Franks, supra,* p 183.

Generally, statutes are applied only prospectively unless the Legislature expressly or impliedly indicates its intention to give them retroactive effect. *Hughes v Judges' Retirement Board,* 407 Mich 75, 85; 282 NW2d 160 (1979); *Franks, supra,* p 185. No such intention is evident in the instant case. In addition, solely prospective application of the statutory standard for compensability for heart and cardiovascular conditions comports with the principle that the law in effect at the time of injury controls an employee's or dependent's rights to workers' compensation benefits. *Tarnow v Rail-*

*way Express Agency,* 331 Mich 558; 50 NW2d 318 (1951); *Franks, supra,* p 185.

One exception to the general rule of prospectivity is that remedial statutes, or statutes related to remedies or modes of procedure, which do not take away vested rights, but instead only operate in furtherance of a remedy or continuation of rights already existing, operate retroactively in the absence of language showing a contrary intention. *Ballog v Knight Newspapers, Inc,* 381 Mich 527, 533-534; 164 NW2d 19 (1969). The new standard for compensability of heart conditions provided a restriction on compensability where none had existed previously, save the general causation requirement outlined in *Kostamo.* It is therefore clear that the statute changed existing substantive law and, as such, the new standard should be limited to prospective application. Contrast *McAvoy v H B Sherman Co,* 401 Mich 419, 456-460; 258 NW2d 414 (1977), and *Borkus v Michigan National Bank,* 117 Mich App 662, 668-669; 324 NW2d 123 (1982).

Saga also contends that, even under the less stringent *Kostamo* standard, decedent's employment with Saga did not contribute to his death. Saga supports this proposition by pointing to the fact that decedent left Saga two months prior to his death and argues that it was decedent's involvement with the Greek Corner that led to his death.

Work or work conditions need only be one of the causes of the disability, they need not be the only one. *Miklik, supra,* p 370. In addition, because the board's conclusion that the stressful effect of decedent's employment on him aggravated his arteriosclerotic condition is a finding of fact, we need only determine that there was some evidence to support that conclusion. See *Aquilina, supra,* p 213.

Decedent's supervisor testified that the kitchen in which decedent worked was extremely hot and poorly ventilated, that decedent had to stand 60% of the time and occasionally lift 40-pound vats of soup and 18-pound roasts and that the work was too much for decedent because of his deteriorated physical condition. In addition, one physician testified that the work decedent did at Saga could have aggravated his arteriosclerosis so as to lead to his heart attacks and subsequent death. Another physician was more certain, testifying that the stressful conditions of decedent's work did aggravate his pre-existing arteriosclerotic condition and precipitated his first heart attack and subsequent demise. The physician also testified that decedent's employment environment was a significant factor in increasing decedent's arteriosclerosis.

The fact that decedent did not die until two months after his last day of work at Saga and the fact that there may have been other causes for decedent's demise do not alter the fact that the evidence was sufficient to show that the work conditions accelerated or aggravated decedent's arteriosclerosis and thus contributed to it. *Kostamo, supra.*

Defendants all argue that the board erred in granting death benefits to plaintiff because there was no evidence that she was dependent upon decedent for support. Plaintiff presented no proof on the issue of dependency and the board assumed dependency, ostensibly because, at the time the board rendered its decision, the act provided that a wife is conclusively presumed to be wholly dependent for support on a husband with whom she lives at the time of his death. MCL 418.331(1)(a); MSA 17.237(331)(1)(a). On March 2, 1982, however, three weeks after the board rendered its decision

in the instant case, the Michigan Supreme Court struck down as unconstitutional the conclusive presumption of dependency. *Day v W A Foote Memorial Hospital,* 412 Mich 698; 316 NW2d 712 (1982). The Court did not state whether its decision should have retroactive or prospective effect.

Generally, unconstitutional statutes are void *ab initio* and, therefore, decisions finding statutes to be unconstitutional are applied retroactively. *Stanton v Lloyd Hammond Produce Farms,* 400 Mich 135, 144-148; 253 NW2d 114 (1977). The *Stanton* Court acknowledged, however, the the necessities of governmental administration may militate in favor of the limited retroactivity of decisions holding legislative acts unconstitutional. 400 Mich 147, citing *Dearborn Fire Fighters Union Local No 412, IAFF v Dearborn,* 394 Mich 229; 231 NW2d 226 (1975).

In the instant case, total retroactivity would require the remand of many cases to the WCAB for hearings on the issue of dependency. Consequently, we hold that the Supreme Court's decision in *Day* should be applied to require proof of dependency only in those cases arising subsequent to the decision in *Day,* cases pending before the WCAB at the time of the decision, and cases already decided by the WCAB in which the parties raised the issue of the constitutionality of MCL 418.331; MSA 17.237(331). See *People v Fields,* 391 Mich 206, 217-221; 216 NW2d 51 (1974), where the Court accorded similar limited retroactivity to its decision holding unconstitutional the statute allowing a probate court to waive jurisdiction over certain juveniles. Limiting retroactive application of *Day* to those employers and carriers who raised the issue of the statute's constitutionality below comports with the general rule that, where a party

fails to raise a constitutional issue at the trial level, the issue has not been preserved for review. *McGruder v Michigan Consolidated Gas Co,* 113 Mich App 664, 667, 671; 318 NW2d 531 (1982).

Because defendants failed to raise the issue of the constitutionality of the conclusive presumption of dependency below, the failure of plaintiff to present any evidence on the issue of dependency does not result in reversal of her award.

Finally, Cregar's and St. Clair argue that the board erred in apportioning to them part of Saga's liability to plaintiff. MCL 418.435; MSA 17.237(435).[2] In so contending, they make several distinct arguments, one of which we deem to be dispositive.

MCL 418.435; MSA 17.237(435) formerly provided in part as follows:

"The hearing referee shall apportion liability for compensation among the several employers in proportion to the time that the employee was employed in the service of each employer in the employment to the nature of which the disease was due and in which it was contracted and shall enter a separate order in favor of the last employer and against prior employers for their proportionate share of liability * * *."

In order to justify apportionment under this provision in the instant case, there must be some evidence that decedent's employment with Cregar's and St. Clair contributed to his stress and therefore his demise. *Hughes v Lakey Foundry Corp,* 91 Mich App 170, 176; 284 NW2d 135 (1979).

---

[2] The Legislature, in 1980 PA 357, effective January 1, 1981, deleted the portions of MCL 418.435; MSA 17.237(435) which allowed apportionment. Because of our resolution of the apportionment issue, we need not decide whether the Legislature's abolition of apportionment is retroactive.

It is not necessary, however, that the employee be subjected to identically disabling conditions. *Id.*

In the instant case, we must reverse the board's order apportioning liability for payments to plaintiff to Cregar's and St. Clair because there was no evidence tending to indicate that decedent's employment with those two defendants contributed in any way to his stress. The only evidence presented remotely bearing on this subject is testimony that decedent was a cook at these establishments. The record does not indicate the conditions under which the decedent worked. We cannot assume that, simply because decedent was a cook at Cregar's and St. Clair, his work there contributed to the stress which led ultimately to his demise. See *Kostamo, supra,* p 119.

Affirmed in part, reversed in part and remanded for entry of an order dismissing Cregar's and St. Clair from the case and absolving them of any liability for Saga's payments to plaintiff.