1964

Moses KIRKSEY, Employee, Respondent v. ASSURANCE TIRE COMPANY, Employer, and South Carolina Insolvency Fund, Carrier, Appellants.

(428 S.E. (2d) 721)

Court of Appeals

*Hal J. Warlick,* Easley, *for appellants.*

*Linda B. McKenzie,* Greenville, *for respondent.*

Heard Nov. 30, 1992; Decided March 1, 1993.

Reh. Den. April 27, 1993.

GOOLSBY, Judge:

Assurance Tire Company and the South Carolina Insolvency Fund appeal the decision of the South Carolina Workers' Compensation Commission awarding Moses Kirksey benefits for an on-the-job accident. The circuit court affirmed. Assurance Tire Company and the Insolvency Fund argue Assurance Tire Company did not regularly employ four employees at the time of Kirksey's accident and, therefore, the commission did not have subject matter jurisdiction to award Kirksey benefits. We reverse.

Because the issue here is jurisdictional, the commission's findings of fact relative to the number of persons employed by Assurance Tire Company are not conclusive on appeal; therefore, the court of appeals has the power and duty to review the record and decide the issue in accordance with the preponderance of the evidence. *Brown v. Moorhead Oil Co.,* 239 S.C. 604, 124 S.E. (2d) 47 (1962); *Crim v. Decorator's Supply,* 291 S.C. 193, 352 S.E. (2d) 520 (Ct. App. 1987).

## FACTS

Kirksey suffered serious injury at work when a van driven by a customer pinned him against a wheel-balancing machine.

At the time of the accident, Assurance Tire Company employed two workers in addition to Kirksey. The controversy in this case concerns the status of Vivian Foster, the daughter of Cecil Scurlock, Assurance Tire Company's owner.

Foster kept the books and performed secretarial duties for her father's tire business. She also ran a produce stand for him on the property. Neither Foster nor her father received a salary. She testified she helped her father out because he was "in a bad financial bind" and because he had "pitched in to help [her] before, like when [she] got married, he gave [her] 10 acres to get started."

Our workers' compensation law exempts an employer from its provisions if the employer "has regularly employed in service less than four employees in the same business within the State." S.C. Code Ann. § 42-1-360(2) (1985). The term "employee" is defined as "[a] person engaged in an employment under any appointment, contract of hire or apprenticeship, express or implied, oral or written." *Id.* § 42-1-130 (Supp. 1991). Only the term "contract of hire" is pertinent here.

A "contract of hire" is "an essential feature of the employment relation." 1B ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 47.10, at 8-302 (1992). The term "contract of hire" connotes payment of some kind. *McCreery v. Covenant Presbyterian Church*, 299 S.C. 218, 223, 383, S.E. (2d) 264, 266 (Ct. App. 1989), *rev'd on other grounds*, 303 S.C. 271, 400 S.E. (2d) 130 (1990); 1B LARSON, *supra*, § 47.41, at 8-346. Payment, however, "need not be in money, but may be in anything of value." *Id.* § 47.43(a), at 8-384. Moreover, an employee's right to demand payment for his services from the employer "would seem to be essential to his right to receive compensation." *Hollowell v. Department of Conservation and Dev.*, 206 N.C. 206, 173 S.E. 603 (1934), *quoted in Lucas v. Li'l General Stores*, 289 N.C. 212, 221, S.E. (2d) 257, 261 (1976).

Although we are mindful of South Carolina's policy of resolving jurisdictional doubts in favor of the inclusion of employers and employees under the Workers' Compensation Act, *Horton v. Baruch*, 217 S.C. 48, 56, 59 S.E. (2d) 545, 548 (1950), we are not persuaded that a preponderance of the evidence supports the conclusion that Foster was an employee of Assurance Tire Company at the time of Kirksey's accident.

■ The evidence points clearly to Foster's having the status of a gratuitous worker. She neither received nor expected to receive any kind of pay for her services. *See McCreery, supra* (wherein an injured volunteer was held not to be an employee of the church since there was no contract of hire); *Charlottesville Music Center, Inc. v. McCray,* 215 Va. 31, 205 S.E. (2d) 674 (1974) (a fifteen-year-old boy who was killed while helping his friend put up shelves and who did not expect any payment for his services was held not to be an employee).

The performance by Foster and the acceptance of Foster's valuable services did not give rise to an implication that payment for her services was expected because the circumstances negated such an expectation. This simply was a case of a daughter helping a father who was in a bad financial way and who had been of help to her apparently years before when she got married and on other occasions. *See Lambard v. Saga Food Serv., Inc.,* 127 Mich. App. 262, 338 N.W. (2d) 207 (1983) (a worker who was paid no wage and was not subject to discipline and who helped his son and two nephews in a restaurant that the four started was not an employee of the restaurant for purposes of workers' compensation law); *Texas Employers Ins. Ass'n v. Burrell,* 564 S.W. (2d) 133 (Tex. Civ. App. 1978) (a worker who sporadically helped his son in his logging contractor business was held not to be an employee where the worker had no contract and received no pay or had no expectation of pay). Nothing about Foster's services to her father suggests they were performed pursuant to an implied contract for an exchange of any kind. She did not receive anything of value, certainly not anything sufficient to sustain a finding of employment. *See* 1B LARSON, *supra,* § 47.43(a), at 8-384 to -387 ("Board[,] room, and training, such as might be furnished a student nurse or hospital intern or laboratory assistant trainee, or student teacher are treated as the equivalent of wages."); *cf. Dockery v. McMillan,* 85 N.C. App. 469, 355 S.E. (2d) 153, 156 (1987) (wherein the evidence was held sufficient to establish an implied oral contract of hire where a father helped his son in the son's roofing business by pricing jobs and occasionally working on job sites and the son gave him spending money and saw "to it that [he] didn't need for anything"); *see also* 99 C.J.S. *Workman's Compensation* § 42b, at 229 (1958) ("An im-

plied contract of hiring may be sufficient to render a person an employee to be taken into consideration in ascertaining the number of employees; and the fact that an employee receives his pay in something other than money does not make his contract for hire any the less legal and effective.").

We might also add the evidence, even were we to assume a contract of hire existed, failed to establish Scurlock had a right of control over Foster. Indeed, the workers' compensation commission did not find he did. *See Behrensen v. Whitaker*, 10 Va. App. 364, 392 S.E. (2d) 508, 510 (1990) (a case involving a relationship described by the court as "one of reciprocal gratuity" and holding a claimant was not an employee entitled to workers' compensation benefits where the evidence neither established a contract of hire nor a right of control).

Reversed.

LITTLEJOHN, Acting Judge, concurs.

GARDNER, J., dissents in a separate opinion.

GARDNER, Judge (dissenting):

I respectfully dissent. Under the South Carolina statue, it is not necessary that there be a contract of hire. Our statute provides "the term employee" means every person engaged in an employment under any *appointment,* contract of hire, or apprenticeship, express or implied, oral or written. S.C. Code Ann. § 42-1-130 (1976). [Emphasis mine.]

The majority opinion cites 1B ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 47.10, at 8-302 (1992). This section includes footnote 59.2 which provides:

> The definitions in a particular statute must always be consulted on this point, since some of them also recognize persons in service under '*appointment*' or 'apprenticeship.' The rules discussed in this section, which assume a 'contract' requirement, may in some circumstances be found inapplicable to an '*appointment*' type of statute. [Emphasis mine.]

For obvious reasons, I disagree with the majority's holding, that "only the term 'contract of hire' is pertinent here." I find no authority which would justify the complete disregard of the clear wording of the statute.

The case of *Stegeman v. St. Francise Xavier Parish*, 611 S.W. (2d) 204 (Mo. 1981) (en banc) is pertinent to this case. There the claimant, a volunteer worker, was injured on his first day of work on the construction of a private school gymnasium. He was held to be an employee "under any appointment," as provided by the Missouri definition. The court held that even though the claimant was an "uncompensated worker," he was entitled to benefits based on the average annual earnings of an adult in the same class of employment. We quote from *Stegeman:*

> (1) Section 287.020 defines an employee as any 'person in the service of any employer . . . under any contract of hire . . . or under any appointment.' Respondent contends that he was an employee under *appointment.* In Missouri, an uncompensated worker is an employee by *appointment* if he is in the service of an employer and that employer exercises control, or has the right of control, over the worker. *Fielder v. Production Credit Association*, 429 S.W. (2d) 307 (Mo. App. 1968); *Lawson v. Lawson*, 415 S.W. (2d) 313 (Mo. App. 1967). It is necessary, therefore, to determine whether there was sufficient competent evidence before the Commission to establish whether the church had the right of control or did control the work of respondent. *Id.* at 206. [Emphasis mine.]

In viewing the relationship of employment, I would hold that the preponderance of evidence supports the findings below. *See McLeod v. Piggly Wiggly Carolina Co.*, 280 S.C. 466, 313 S.E. (2d) 38 (Ct. App. 1984). The Commission and the trial judge found that there was no necessity of pay. Additionally, there is a total absence of proof for the proposition that Cecil Scurlock did not exercise control over the work of Vivian Foster. She was appointed to keep the books and she did this. She was appointed to run a vegetable stand and she did this. The entire record establishes the fact that Cecil Scurlock drove his daughter to work, directed the work that she was supposed to do and in general exercised the right of control.

For the above reasons, I would affirm.