# Richmond

## Gorman Wyatt Phillips v. Overton Copeland Stewart.

June 13, 1966.

Record No. 6224.

Present, Eggleston, C. J., and Spratley, Snead, I'Anson, Carrico and Gordon, JJ.

*William J. McGhee* (*William R. L. Craft, Jr.*, on brief), for the plaintiff in error.

*John B. Spiers, Jr.* (*Spiers and Spiers*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Gorman Wyatt Phillips, the plaintiff, filed a motion for judgment against Overton Copeland Stewart, the defendant, seeking to recover damages for personal injuries allegedly sustained by the plaintiff when he was struck, while walking across Main Street in the town of Christiansburg, by an automobile operated by the defendant. The case was tried before a jury and, at the conclusion of all the evidence, the trial court struck the plaintiff's evidence and entered summary judgment in favor of the defendant. From the final order embodying the court's rulings, the plaintiff was granted this writ of error.

Since his evidence was stricken, the plaintiff is entitled to have the evidence viewed and stated in the light most favorable to him, in determining whether the court correctly acted upon the defendant's motion to strike. *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 322, 130 S. E. 2d 462. So viewed, the evidence discloses the following situation:

Main Street (U. S. Route 11) runs east and west and is 48 feet

wide in the business district where the accident occurred. On each side of the street, parallel parking spaces 7½ feet wide are provided. In the middle of the block in which the accident took place, the State Highway Department, several years ago, installed a pedestrian crosswalk extending from one side of the street to the other.

The crosswalk is 6 feet wide and is indicated by ten large, white blocks painted on the paved surface of the street, with yellow lines at the crosswalk entrance on each side. Approximately three weeks before the date of the accident, a traffic light was suspended above the crosswalk in the middle of the street and "Walk" and "Don't Walk" signals were installed at each end of the crosswalk. The traffic light and "Walk" signals are operated during business hours but are turned off on Sundays and holidays.

The accident occurred at 11 a.m. on December 26, 1963. There had been a snowfall three days earlier and the snow had been pushed to the curbs at the sides of the street. The traveled portion of the street was free of snow and dry. The weather was clear. The traffic light and "Walk" signals at the crosswalk were not operating, according to the town's chief of police, because "it was the day after Christmas and all the stores was closed."

The plaintiff, who operated a farm near Christiansburg, accompanied his son to town on the morning of the accident. He alighted from his son's truck and walked along the south side of Main Street until he reached the crosswalk in the middle of the block, intending to cross to the north side to make a purchase at a drug store. He entered the crosswalk and looked to his left and to his right. Traffic proceeding east, from his left, stopped to permit him to pass.

When the plaintiff neared the middle of the street, he saw the defendant's vehicle proceeding in a westerly direction toward him, approximately 140 feet away. The plaintiff testified, "I thought it was going to stop for me to cross, and I started on, and next thing I knew I heard that racket and I was lying there in the street." The plaintiff was struck, while in the crosswalk, by the defendant's automobile after he had taken one or two steps into the west-bound lane.

The defendant, who was a stranger in Christiansburg, was driving 30 to 35 miles per hour in a 25 mile zone. He did not see the plaintiff until the latter was "somewhere about the center of the road." The defendant did not see the crosswalk or the traffic light suspended above it. In short, according to the defendant himself, he "didn't see anything."

The trial court struck the plaintiff's evidence on the ground that he was guilty of contributory negligence as a matter of law. In so acting, the court stated that when the traffic light above the crosswalk was not operating "it eliminated the pedestrian crosswalk . . . That being the case, the pedestrian did not have the favored right of way . . . But even assume that he would have had that favored position, still . . . his evidence . . . presents a picture of a pedestrian blindly walking across the road in front of oncoming vehicular traffic. That of itself is the grossest kind of contributory negligence...."

The principal determination to be made is whether the evidence showed that the plaintiff was guilty of contributory negligence as a matter of law.

In making that determination, we must follow the familiar rule that questions of negligence, whether primary or contributory, are ordinarily for the jury to decide. That is so because such questions are almost always ones of fact, and the jury is peculiarly constituted in our system of law to try such questions. They become questions of law to be decided by the court only when reasonable men should not differ in their opinions as to the reasonable inferences and the proper conclusions to be drawn from the evidence. *Spiegelman* v. *Birch, Adm'r*, 204 Va. 96, 99, 129 S. E. 2d 119; *Rhoades* v. *Meadows*, 189 Va. 558, 561, 54 S. E. 2d 123.

In situations like the one before us, involving the rights and duties of pedestrians vis-à-vis the operators of motor vehicles, we have adopted and observed the following rule:

"The question as to whether a pedestrian, who is struck by an automobile or other motor vehicle, at or near a regular street crossing, or at a place customarily used as a crossing, exercised proper care, or has been guilty of contributory negligence which will defeat his recovery for injuries sustained by such collision, is almost invariably one for the jury." *Danner* v. *Cunningham*, 194 Va. 142, 146-147, 72 S. E. 2d 354.

Guided by these principles, we reach the conclusion that the plaintiff was entitled to have the jury pass upon the question of his alleged contributory negligence.

Code, § 46.1-231, provides, insofar as is applicable here, as follows:

"(a) The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk. . . ."

We have no difficulty in finding that the crosswalk here in question was, at the time of the plaintiff's accident, just such a "clearly marked crosswalk" as is contemplated by Code, § 46.1-231, notwithstanding that the traffic light and "Walk" signals were not operating at that time. The large, white blocks painted on the street served to give adequate notice to motorists and pedestrians alike of the presence and purpose of the crosswalk.

Code, § 46.1-231 prescribes no method by which such a crosswalk should be "clearly marked." Nor does the Code section require the installation of lights or signals to make such a crosswalk effective. The operation of the light and signals at the crosswalk in question during business hours served only as an added precaution when vehicular and foot traffic were heaviest.

Since the crosswalk met the requirements of Code, § 46.1-231, it follows that the plaintiff had the right of way over the defendant's automobile. That right of way continued during the plaintiff's entire crossing of the street, as long as he remained in the crosswalk, extending, that is, from one side of the street to the other. *Marshall, Adm'r* v. *Shaw,* 196 Va. 678, 684, 85 S. E. 2d 223; *Danner* v. *Cunningham, supra,* 194 Va., at p. 144.

The plaintiff was not required to look continuously at the defendant's vehicle as he negotiated his crossing of the street. Since he was crossing at a proper place, the plaintiff had the right to assume that the defendant would yield the right of way to him. *Bethea* v. *Virginia Elec., Etc., Co.,* 183 Va. 873, 879, 880, 33 S. E. 2d 651; *Virginia E. & P. Co.,* v. *Steinman,* 177 Va. 468, 474-475, 14 S. E. 2d 313.

The plaintiff was, of course, bound to exercise reasonable care for his own safety. He was not entitled arbitrarily to assert his right of way by crossing in the face of traffic dangerously close to him. Such action on his part would have constituted contributory negligence as a matter of law and barred his recovery. *Whichard* v. *Nee,* 194 Va. 83, 88, 72 S. E. 2d 365; *Thornton* v. *Downes,* 177 Va. 451, 458, 14 S. E. 2d 345.

But the one overriding fact which saves the plaintiff's case and makes a jury question of his alleged contributory negligence appears in the following excerpt from his testimony:

"Q. Now, you say that you thought that the car going west was going to stop to allow you to cross. Did the car do anything to indicate that to you?

"A. *Well, it slowed down a little bit, like it was going to stop,* but it never stopped.

"Q. Now, were you in the crosswalk when the car did that?

"A. Yes. *I was about, oh, about middle ways of the street.*" [Emphasis added.]

Thus, when the plaintiff was approximately in the middle of the street, he saw the defendant's vehicle slow down as if it were going to stop to permit him to cross in front of it. That such action on the part of the defendant led the plaintiff into a false sense of security cannot be doubted in light of the ensuing collision. But it was for the jury to say whether the plaintiff, in crossing in front of the car under those circumstances, was justified in so responding to the slowing down of the defendant's vehicle and whether he exercised due care for his own safety.

It is true, as the defendant points out, that the plaintiff stated earlier in his testimony that he saw the defendant's vehicle when he first entered the crosswalk and did not again look to his right before entering the west-bound lanes of travel. But, again, it was for the jury to accept or reject the plaintiff's later statement that he was "about middle ways of the street" when he saw the defendant's vehicle slow down and thought it was going to stop to permit him to cross. *VEPCO* v. *Mabin,* 203 Va. 490, 494, 125 S. E. 2d 145.

The defendant alternatively argues that the evidence was insufficient to show negligence on his part, thus providing further basis for the trial court's action in striking the plaintiff's evidence.

We are of opinion that the evidence was sufficient to make a jury question of the defendant's negligence. From the evidence, the jury could have found that the defendant was operating his automobile in excess of the speed limit; that he was not keeping a proper lookout, and that he failed to yield the right of way to the plaintiff. *Rhoades* v. *Meadows, supra,* 189 Va., at p. 561; *Pointer* v. *Green,* 193 Va. 757, 761, 71 S. E. 2d 155.

It was error, therefore, for the trial court to strike the plaintiff's evidence and enter summary judgment for the defendant.

Since the case must be remanded for a new trial, it is necessary that we pass upon several subsidiary questions raised by the plaintiff.

The plaintiff says that the court erred in refusing to permit evidence as to why the traffic light was installed at the crosswalk and evidence as to the frequency with which the crosswalk was used by pedestrians.

We have already ruled that the crosswalk met the requirements of Code, § 46.1-231, regardless of whether the light and signals were operating. That being so, upon a retrial of the case there should be no question concerning the legal existence of the crosswalk and no necessity for the type of evidence with respect thereto which the plaintiff sought to introduce at the first trial.

The plaintiff next says that the court erred in refusing to permit the testimony of two lay witnesses "as to the general health of the plaintiff . . . prior to the accident."

The defendant objected to the offered testimony on the ground that such witnesses "cannot testify from a medical standpoint." The court sustained the objection as to the testimony of the first witness, but he went on to testify at length as to the plaintiff's ability to work before and after the accident and his "attitude and demeanor towards people and things after the accident." The court did not rule on the objection to the testimony of the second witness and he told the jury of the plaintiff's health and activities before and after the accident. Under these circumstances, it cannot be said that the plaintiff was, in any way, prejudiced by the action of the trial court.

Upon a retrial of the case, the trial court, in this connection, should be guided by the principles set forth in *Pepsi-Cola Bottling Co.* v. *McCullers*, 189 Va. 89, 97, 98, 52 S. E. 2d 257. There, quoting from 20 Am. Jur., Evidence, § 859, p. 719 and § 860, p. 721, it was stated:

"The opinions of lay or nonexpert witnesses who are familiar with a person whose physical condition is in question and have had opportunity for observing him are competent evidence on issues concerning the general health, strength, and the bodily vigor of such person, his feebleness or apparent illness, or changes in his apparent state of health or physical condition from one time to another."

\* \* \* \*

"The rule permitting lay or nonexpert witnesses to testify to the apparent physical condition of a person which is open to ordinary observation by persons of common experience does not extend to permit such witnesses to testify as to the existence, nature, or character of latent conditions or to the existence of a particular disease which is discoverable, or the nature and character of which is determinable, only through the peculiar experience, knowledge, and training of a physician. Generally, opinions of such (lay) witnesses are limited to opinions as to physical condition. \* \* \*"

The plaintiff finally says that the court erred in refusing to

permit testimony as to why he sold his herd of cattle subsequent to the accident. The plaintiff did not tell the trial court nor does he now tell us the purpose for which this testimony was offered, but it must be assumed that it was for the purpose of enhancing the damages which he sought.

The offered testimony was, in any event, inadmissible. If the plaintiff, because of his injuries, was required to sell his herd of cattle and suffered a loss as a result, such loss would have been too speculative and remote to be considered as the natural and proximate result of any wrongful act on the part of the defendant. *Tullock* v. *Hoops*, 206 Va. 665, 670, 145 S. E. 2d 152. Such evidence, if offered upon a retrial of the case, should again be excluded.

The judgment of the trial court is reversed and the case is remanded for a new trial not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*