ROBERT H. HUMPHRIES

v.

DAVID GRANT THOMAS, ADMINISTRATOR OF THE ESTATE
OF DWIGHT ANDERSON THOMAS, DECEASED

Record No. 920359

STATE FARM FIRE AND CASUALTY COMPANY

v.

DAVID GRANT THOMAS, ADMINISTRATOR OF THE ESTATE
OF DWIGHT ANDERSON THOMAS, DECEASED

Record No. 920360

November 6, 1992

Present: All the Justices

572

*Heather Sanderson Lewis (Neal S. Johnson; Natkin & Heslep*, on briefs), for appellant. (Record No. 920359)

*Gregory T. St. Ours (Wharton, Aldhizer & Weaver*, on brief), for appellee. (Record No. 920359)

*Johnnie L. Speight (Ronald M. Ayers; Johnson, Ayers & Matthews*, on briefs), for appellant. (Record No 920360)

*Gregory T. St. Ours (Wharton, Aldhizer & Weaver*, on brief), for appellee. (Record No. 920360)

JUSTICE KEENAN delivered the opinion of the Court.

Robert H. Humphries, the sole proprietor of Carpet Showcase and Carpet Showplace (Carpet Showcase), sought recovery of damages from the estate of Dwight Anderson Thomas (the Estate), which he alleged were caused by Thomas's negligence in the operation of a motor vehicle. The Estate defended the claim on the ground that Thomas was an employee of Carpet Showcase and, therefore, Humphries's suit was barred by the exclusivity provisions of the Virginia

Workers' Compensation Act (the Act).[1] Former Code § 65.1-1, *et seq.* (now Code § 65.2-100, *et seq.*). The sole question in this appeal is whether the trial court erred in granting the Estate's motion for summary judgment on that basis.[2]

There are no material facts in dispute. On April 1, 1988, Humphries was injured in an accident while riding as a passenger in his own pickup truck. Earlier in the day, after several unsuccessful attempts to find someone to accompany him to Memphis, Tennessee, Humphries encountered Thomas and asked him "if he wanted to go along" with him to purchase a trailer for Carpet Showcase. Thomas agreed to make the trip. The parties departed from Steeles Tavern, Virginia, about 4:30 p.m. Although Humphries had not asked Thomas to drive the truck, he permitted him to do so because Thomas enjoyed driving. Thomas was killed in the accident, which occurred four hours into the trip.

Carpet Showcase, a retail business, sells carpet and other floor coverings, but does not install these items for its customers. If a customer needs installation work, Carpet Showcase arranges to have the work done by independent installers. For approximately two and one-half years prior to the date of the accident, Thomas performed an average of from 30%-50% of this installation work. Humphries and Thomas had chiefly a business relationship, although, on occasion, they had been together "in what were more social circumstances than business [circumstances]."

On the day in question, Humphries asked Thomas if he wanted to ride with him to Memphis, primarily for the purpose of having his company on the trip. There was no agreement that Humphries would pay Thomas any money or cover his expenses for the trip. However, on one occasion en route, Humphries did buy refreshments for himself and for Thomas. During the trip, the two men discussed both business and social topics.

The trial court found that "Thomas had little incentive to make the trip except to solidify his relationship with Humphries," and

---

[1] Under former Code § 65.1-4.2 (now Code § 65.2-101(4)), Humphries, as a sole proprietor, elected to be covered as an employee of Carpet Showcase under its workers' compensation policy issued by the State Farm Fire and Casualty Company.

[2] On request of the Estate, the trial court had earlier dismissed with prejudice the Estate's motion for judgment against Humphries.

that, although Thomas was not paid for making the trip, "compensation nonetheless enured to him and to his benefit." Thus, in granting the Estate's motion for summary judgment, the trial court concluded that, for purposes of the Act, Thomas was an "employee" of Carpet Showcase at the time of the accident.

In reviewing the trial court's ruling, we initially observe that, because there are no material facts in dispute, the issue whether an individual is an "employee" within the meaning of the Act is a question of law. *Mims v. McCoy*, 219 Va. 616, 618, 248 S.E.2d 817, 818 (1978). Here, Humphries contends that the trial court erred as a matter of law in concluding that Thomas was compensated by Carpet Showcase for undertaking the trip to Memphis. He argues, therefore, that Thomas was not an "employee" of Carpet Showcase within the meaning of Code § 65.2-101.

Code § 65.2-101 defines an "employee," for purposes of workers' compensation, as

[e]very person, including a minor, in the service of another under any contract of hire or apprenticeship, written or implied, except (i) one whose employment is not in the usual course of the trade, business, occupation or profession of the employer. . .[3]

Thus, Thomas was an "employee" of Carpet Showcase only if he made the trip under a written or implied contract of hire.

The Estate concedes that there was no express contract here, either written or oral. Instead, it argues that the nature of the parties' relationship and the anticipated length of the trip were sufficient to establish an implied contract of hire. We disagree.

As this Court stated in *Charlottesville Music Ctr. v. McCray*, 215 Va. 31, 205 S.E.2d 674 (1974):

An implied contract of hire exists where one party has rendered services or labor of value to another under circumstances which raise the presumption that the parties intended and understood that they were to be paid for, or which a reasonable man in the position of the person receiving the benefit of the

---

[3] This definition of "employee" is the same as that set forth in former Code § 65.1-4, which was in effect at the time this case was heard in the trial court.

services or labor would or ought to know that compensation or remuneration of some kind was to be exchanged for them.

*Id.* at 35, 205 S.E.2d at 678.

In the case before us, Thomas performed a large part of the installation work required by Carpet Showcase's customers. The mere circumstance of this relationship, however, does not raise a presumption that the parties intended and understood that Thomas would be compensated in exchange for making the trip. Nor does it establish that Humphries would or ought to have known that, in return for Thomas's company, he was obligated to provide compensation or remuneration. The Estate's contention, that it was ''in Thomas's interest and to his benefit'' to solidify his relationship with Humphries, addresses only Thomas's reasons for making the trip and does not constitute evidence of what Humphries would or ought to have known regarding compensation or renumeration. Also, the anticipated length of the trip does not establish constructive knowledge on Humphries's part, since there is no evidence that he asked Thomas to perform any tasks or render other assistance during the trip. Based on this record, we hold that there was no implied contract of hire. *Id.*

''When services or labor are rendered voluntarily without a promise of compensation or remuneration of any kind, express or implied, then the one providing the services or labor has supplied them gratuitously, and is not covered by the Act.'' *Id.* at 35, 205 S.E.2d at 678. Since, as a matter of law, there was no implied contract of hire between Carpet Showcase and Thomas, Thomas's act of accompanying Humphries on the trip was gratuitous. Thus, he was not an ''employee'' of Carpet Showcase within the purview of the Act. *Id.*; Code § 65.2-101.

For these reasons, we will reverse the decision of the trial court and remand this case for a trial on the merits of Humphries's counterclaim.

*Reversed and remanded.*