PRESENT: Kinser, C.J., Lemons, Millette, Mims, McClanahan, and Powell, JJ., and Russell, S.J.

DORTHE CRISP GIBBS, EXECUTOR OF THE
ESTATE OF KENNETH M. GIBBS, DECEASED

OPINION BY
v.  Record No. 111870        SENIOR JUSTICE CHARLES S. RUSSELL
                                    November 1, 2012

NEWPORT NEWS SHIPBUILDING
AND DRYDOCK COMPANY

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

This appeal from an order dismissing an action for wrongful death presents the question whether the decedent, who was serving on active duty with the armed forces of the United States at the time of his injury, was covered by the Virginia Workers' Compensation Act (the Act), Code §§ 65.2-100 through -1310.  If his injury, which was the subject of this action, came within the purview of the Act, an award under the Act would have been his estate's exclusive remedy, barring this action.

Facts and Proceedings

The material facts are not in dispute.  At all times pertinent to this appeal, Kenneth M. Gibbs was an enlisted seaman, rated as an electronics technician, serving on active duty in the U.S. Navy.  In 1962, the Navy entered into a contract with Newport News Shipbuilding and Drydock Company (the Shipyard) for the purchase of two nuclear submarines at an estimated contract price of $46,440,000 each.  The vessels were to be constructed in the Shipyard and delivered to the Navy on

completion. The contract specifically provided that during construction, federal government personnel would have access to the vessels for testing and training purposes.

One of the submarines, to be commissioned as USS Lewis and Clark, SSB(N) 644, was scheduled for preliminary acceptance by the Navy in November 1965. In mid-1965, Gibbs was ordered to be part of the Lewis and Clark's pre-commissioning crew. His duties were to test and inspect electronic systems on the vessel during the six months prior to its final delivery.

In 2008, Gibbs brought a civil action against the Shipyard and other defendants, alleging that while performing his duties aboard the Lewis and Clark he had been required to work daily in areas in which shipyard workers were installing asbestos products, that he had been exposed to large quantities of asbestos dust and fibers during this period and that he had contracted malignant mesothelioma as a result of this exposure.

Gibbs died on January 25, 2009. His widow, Dorthe Crisp Gibbs, qualified as administrator of his estate and amended the complaint to assert a claim for wrongful death pursuant to Code § 8.01-56, alleging that Gibbs' death was proximately caused by his mesothelioma. The Shipyard filed a plea in bar, asserting that the Act provided the estate's exclusive remedy. The circuit court sustained the plea in bar and entered an order

dismissing the action with prejudice.  We awarded the plaintiff an appeal.

## Analysis

This appeal presents a pure question of law and is subject to a de novo standard of appellate review.  David White Crane Serv. v. Howell, 282 Va. 323, 327, 714 S.E.2d 572, 575 (2011).

The Shipyard's plea in bar was based on the exclusivity provision of the Act.  That provision is contained in Code § 65.2-307(A), which provides:

> The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death.

This language is plain and unambiguous.  Its exclusivity provision applies only when employer and employee have both "accepted the provisions of this title [the Act] respectively to pay and accept compensation."

No party contends that the Navy had "accepted the provisions" of the Act or was subject to the Act in any way.[1]

_____

[1] Code § 65.2-300(A) provides: "Every employer and employee, except as herein stated, shall be conclusively presumed to have accepted the provisions of this title. . . ."  Even in the context of the important state remedial statutory schemes

3

Rather, the Shipyard contends that the Navy was the Shipyard's statutory employer, that Gibbs was the Navy's employee, and that Gibbs and the Shipyard were therefore statutory co-employees between whom the exclusivity provision applies (citing Nichols v. VVKR, Inc., 241 Va. 516, 403 S.E.2d 698 (1991)).

We do not agree with that analysis. Code § 65.2-302(A) provides that when any owner contracts with another to perform any work within the owner's trade, business or occupation, the owner shall be liable to pay to any worker on the job "any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him." Because the Navy would not in any circumstances have been liable to pay compensation under the Act, it was not the Shipyard's statutory employer.

Further, it is immaterial whether Gibbs was the Navy's "employee" within the Act's definition. The Shipyard points out

embodied in workers' compensation laws, "the Supremacy Clause immunizes the activities of the Federal Government from state interference," Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 181 (1988) (citing Mayo v. United States, 319 U.S. 441, 445 (1943)). See also Hillsborough Cnty. v. Automated Med. Labs., Inc., 471 U.S. 707, 712-13 (1985) (application of Supremacy Clause to state law). The Federal Employees' Compensation Act, 5 U.S.C. § 8116, is the mandatory and exclusive remedy for federal employees injured or killed while performing their job duties. 5 U.S.C. § 8116(c). That statute has a number of specifically applicable requirements, including the filing of an administrative claim with the agency involved, including the Navy. See Reep v. United States, 557 F.2d 204, 206 & n.1 (9th Cir. 1977).

that Code § 65.2-101 defines "employee" as one working under a "contract of hire" and argues that the term is broadly defined in the statute.  The estate responds that the statute also contains nineteen specific classes of workers additionally defined as employees and that those additional classes do not include members of the armed forces on active duty.  Applying the principle _expressio_ _unius_ _est_ _exclusio_ _alterius_, the estate argues that the omission of military service members was significant and renders the "contract of hire" definition less broad than it appears to be.

Military service has little in common with the employer-employee relationships of commerce and industry.  Military service does not necessarily arise from voluntary enlistment.  At times in our history, it has been, and may again become, compelled by involuntary conscription.  Its training is rigorous, its discipline is strict, and those subject to it have no freedom to withdraw from it.  It imposes duties that may often extend to the hazard of life itself.  It is difficult to imagine that the General Assembly intended to include it within the term "contract of hire," however broadly defined.

For the purposes of this appeal, it is not necessary to define the outer limits of "contract of hire."  Neither we nor the General Assembly has the authority to define our laws in such a way as to affect the relationship between the federal

5

government and members of its armed forces on active duty. Further, as stated above, the laws of Virginia, however construed, cannot subject the Navy to the requirements of the Virginia Workers Compensation Act.[2]  For these reasons, Gibbs never acquired the right to seek compensation under the Act.

In Adams v. Alliant Techsystems, Inc., 261 Va. 594, 544 S.E.2d 354 (2001), we drew a distinction between plaintiffs who have a right to claim benefits under the Act but whose claims are subject to defenses, and those whose claims fall entirely

_____

[2] The Shipyard relies on federal cases in which branches of the armed forces have been held to be statutory employers within the Act.  Those cases are inapposite here because they were actions brought against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, wherein the federal government consents to be sued "in the same manner and to the same extent as a private individual in like circumstances."  28 U.S.C. § 2674.  Unlike Gibbs, the plaintiffs in those cases had the right to seek benefits under the Tort Claims Act.  Gibbs, as a service member, had no such right.  The "Feres doctrine" bars an action under the Federal Tort Claims Act on behalf of a service member injured or killed during the course of an activity incident to service, where the complainant alleges negligence on the part of the government, or its civilian servants.  See United States v. Johnson, 481 U.S. 681, 682 (1987) (construing Feres v. United States, 340 U.S. 135, 146 (1950) ("in Feres, this Court held that service members cannot bring tort suits against the Government for injuries that 'arise out of or are in the course of activity incident to service' ")).  This bars suit against the Navy for injuries caused by civilians as well, Johnson, 481 U.S. at 686-87 & n.8.  However, the United States Supreme Court has held that while "a federal employee may not bring a tort suit against the Government on the basis of a work-related injury, [he or his personal representative] may seek recovery from a third party."  Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 191 (1983).

6

outside the purview of the Act.  We held that the exclusivity bar of Code § 65.2-307 applies to plaintiffs in the first class, but that the bar does not apply and the common-law right to bring an action to recover for workplace injuries survives as to plaintiffs, like Gibbs, who fall within the second class.  Id. at 598-99, 544 S.E.2d at 356.

In Whalen v. Dean Steel Erection Co., 229 Va. 164, 327 S.E.2d 102 (1985), we described the Act as a quid pro quo, providing no-fault compensation for workers in exchange for immunity for employers from actions at common law.  We characterized the Act as "a societal exchange, benefitting all employers and all employees who stand together under the canopy of the Compensation Act."  Id. at 171, 327 S.E.2d at 106.  Here, neither Gibbs nor any employer stood under that canopy.[3]

Lacking any remedy under the Act, Gibb's estate is unaffected by the exclusivity bar of Code § 65.2-307.  See Delp v. Berry, 213 Va. 786, 789, 195 S.E.2d 877, 879 (1973); Virginia Used Auto Parts v. Robertson, 212 Va. 100, 102-03, 181 S.E.2d 612, 613-14 (1971). The Circuit court therefore erred in sustaining the Shipyard's plea in bar.

_____

[3] No contention is made that the Shipyard was Gibbs' employer.

7

<u>Conclusion</u>

For the reasons stated, we will reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.


JUSTICE McCLANAHAN, with whom JUSTICE MIMS joins, dissenting.

I would affirm the judgment of the circuit court because the claim asserted by Gibbs' estate in this action falls within the purview of the Virginia Workers' Compensation Act (the "Act" or the "Virginia Act"), Code §§ 65.2-100 through -1310, which provides the estate's exclusive remedy.[1]

A. Proper Analysis of Whether Claim is Barred

---

[1] Under the exclusive remedy provision of the Act, "[a]n employee subject to the provisions of the Workers' Compensation Act cannot file an independent tort action against his employer or any fellow employee for injuries received in the course of employment." <u>Hudson v. Jarrett</u>, 269 Va. 24, 29, 606 S.E.2d 827, 829 (2005). "Contractors, subcontractors, and all workers who are engaged in the trade, business, or occupation of the owner of a project are deemed to be statutory fellow employees." <u>Nichols v. VVKR, Inc.</u>, 241 Va. 516, 519, 403 S.E.2d 698, 700 (1991); Code § 65.2-302. "The remedy for any injury suffered by any one of them as a result of the alleged negligence of another, while engaged in the trade, business, or occupation of the owner, is limited to that available under the Workers' Compensation Act." <u>Nichols</u>, 241 Va. at 519, 403 S.E.2d at 700.

8

In determining whether a claim is barred by the exclusivity provision of the Act, the Court must determine whether the estate alleges an injury that occurred out of and in the course of Gibbs' employment, not whether a claim under the Act would have been subject to a defense rendering it non-compensable. Giordano v. McBar Indus., 284 Va. 259, 264, 729 S.E.2d 130, 133 (2012)

"When an employee is injured in a work-related accident, the Virginia Workers' Compensation Act provides the sole and exclusive remedy available." Rasnick v. Pittston Co., 237 Va. 658, 660, 379 S.E.2d 353, 354 (1989); Code § 65.2-307(A). "An injury is subject to the exclusivity provision of the Act if it is the result of an accident and arises out of and in the course of the employment." Richmond Newspapers, Inc. v. Hazelwood, 249 Va. 369, 372, 457 S.E.2d 56, 58 (1995). "Put simply, when an injury falls within the purview of Code § 65.2-300, the exclusivity provision applies." Giordano, 284 Va. at 264, 729 S.E.2d at 133.

The analysis of whether the claim made by Gibbs' estate falls within the purview of the Act, therefore, begins with a determination of whether the injury resulting in his death was sustained in the course of employment. Id. This is so because as Code § 65.2-300(A) expressly states, "[e]very employer and employee, except as herein stated, shall be conclusively

9

presumed to have accepted the provisions of this title respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment and shall be bound thereby."  Furthermore, "[e]xcept as otherwise provided herein, no contract or agreement, written or implied, and no rule, regulation or other device shall in any manner operate to relieve any employer in whole or in part of any obligation created by this title."  Code § 65.2-300(A).

While the majority acknowledges that employers are conclusively presumed to have accepted the provisions of the Act, the majority summarily holds that the Navy could not have accepted the provisions of the Virginia Act because " 'the Supremacy Clause immunizes the activities of the Federal Government from state interference.' "  (quoting Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 181 n.1 (1988)).[2]  If a claim were filed against the Navy under the Virginia Act, the Navy could undoubtedly defend against it on the grounds that the claim is preempted by a conflicting federal act[3] or that the United States

---

[2] The majority states that no party contends that the Navy had accepted the provisions of the Act.  To the contrary, the Shipyard asserts that the Act "has neither excluded nor exempted the Navy or its employees from the Act."

[3] The preemption doctrine, rooted in the Supremacy Clause, requires an examination of congressional intent to supersede state law.  Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152 (1982).  The intent to preempt state law may be express, or inferred because "[t]he scheme of federal regulation

is protected from suit by sovereign immunity.  The fact that the claim is subject to a defense, though, does not affect the applicability of the Act to the Navy's employees.

> [A] successfully asserted defense under the Act may render a particular claim non-compensable; however, there is a significant difference between a claim arising within the purview of the Act that is subject to defenses and a claim that is not within the purview of the Act at all.  In the former case, there is no recourse to common law remedies; in the latter case, there is.

Adams v. Alliant Techsystems, Inc., 261 Va. 594, 599, 544 S.E.2d 354, 356 (2001).  More specifically, the fact that the United States is shielded "from liability arising out of the death of a federal employee in any type of proceeding,

---

may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).  The Supremacy Clause does not, in and of itself, grant immunity to the federal government.  Nor is the Virginia Act invalidated by the Supremacy Clause.  Rather, if the Navy asserted the claim was barred under the Supremacy Clause, the Virginia Workers' Compensation Commission would be required to determine whether enforcement of the Act against the Navy would be precluded by a federal act. See, e.g., Goodyear Atomic, 486 U.S. at 182-186 (application of state workers' compensation law provision to federal facility not barred by Supremacy Clause where federal law empowered states to apply workers' compensation laws to federal premises); McCotter v. Smithfield Packing Co., 849 F. Supp. 443, 447 (E.D. Va. 1994) (Federal Employees' Compensation Act "does not exempt federal employees from the [Virginia Workers' Compensation Act]").

11

including a proceeding brought under a state workers'
compensation act . . . has no effect on the liability of a
third party who asserts the exclusivity of a state workers'
compensation scheme to shield it from liability." McCotter
v. Smithfield Packing Co., 849 F. Supp. 443, 447 (E.D. Va.
1994). Thus, the fact that the Navy is entitled to defend
against a claim under the Virginia Act on federal law
preemption or sovereign immunity grounds does not affect
whether the claim falls within the purview of the Act.

The majority's sweeping contention that the Act has no
application to the federal government, and the Navy in
particular, is inconsistent with the position taken by the
federal government, including the Navy, in prior cases in
which it has sought protection under the Virginia Act's
exclusivity provision. See, e.g., Pendley v. United States,
856 F.2d 699, 702 (4th Cir. 1988)(United States Air Force
deemed statutory employer under Virginia Act); Hose v. United
States, 604 F. Supp. 2d 147, 150-52 (D. D.C. 2009) (State
Department deemed statutory employer under Virginia Act);
Coulter v. United States, 256 F. Supp. 2d 484, 489-90 (E.D.
Va. 2003) (United States Marine Corps deemed statutory
employer under Virginia Act); Perry v. United States, 882 F.
Supp. 537, 539-40 (E.D. Va. 1995) (United States Navy deemed

12

statutory employer under Virginia Act); <u>Hyman v. United States</u>, 796 F. Supp. 905, 906-08 (E.D. Va. 1992) (same).[4]

### B. Gibbs' Injury Arose Out of and in the Course of Employment

The parties do not dispute that Gibbs sustained an injury by accident arising out of and in the course of his service to the Navy. The issue raised by the appeal is whether Gibbs was an employee of the Navy within the meaning of the Virginia Act. Although the majority finds it "immaterial whether Gibbs was the Navy's 'employee' within the Act's definition," I believe this is a threshold question that must be answered in determining whether the claim made by Gibbs' estate comes within the purview of the Act. In making this determination, I would hold that Gibbs was an employee of the Navy within the meaning of the Virginia Act and, therefore, his injury arose out of and in the course of his employment with the Navy.

---

[4] Because the federal cases in which branches of the armed forces were held to be statutory employers were brought against the United States under the Federal Tort Claims Act, the majority dismisses these cases as "inapposite" since the "<u>Feres</u> doctrine" bars actions under the Federal Tort Claims Act by service members. However, whether or not a plaintiff may bring a tort suit against the federal government under the Federal Tort Claims Act has no bearing on whether a federal employee's claim falls within the purview of the Virginia Workers' Compensation Act. The Virginia Act controls whether a claim falls within its purview, and that determination is neither affected by the Federal Tort Claims Act nor any other federal law.

The Act provides, in relevant part, that an "employee" includes "[e]very person, including aliens and minors, in the service of another under any contract of hire or apprenticeship, written or implied."  Code § 65.2-101.  "A 'contract of hire' is usually defined as an agreement [written or implied] in which an employee provides labor or personal services to an employer for wages or remuneration or other thing of value supplied by the employer."  Charlottesville Music Center, Inc. v. McCray, 215 Va. 31, 35, 205 S.E.2d 674, 677 (1974).[5]  When no material facts are in dispute, "the issue whether an individual is an 'employee' within the meaning of the Act is a question of law."  Humphries v. Thomas, 244 Va. 571, 574, 422 S.E.2d 755, 756 (1992).

As an initial matter, the estate alleges Gibbs' injury arose out of and in the course of his "employment" with the Navy. Although the estate's characterization of Gibbs' relationship with the Navy as "employment" is not binding on the Court, a contract of hire may be presumed from the circumstances

_____

[5] In determining whether a person paid for work is an employee rather than an independent contractor, the Court has identified four elements generally existing in the master and servant relationship: (1) selection and engagement of the employee; (2) payment of wages; (3) power of dismissal; and (4) power of control over the worker's action.  See Stover v. Ratliff, 221 Va. 509, 511, 272 S.E.2d 40, 42 (1980).  Gibbs' estate does not contend that any of these factors are lacking in Gibbs' relationship with the Navy.  Rather, the estate argues the relationship between an active duty service member of the military is not the "typical private employment scenario."

14

surrounding the parties' relationship and their understanding that compensation would be paid for services rendered. Charlottesville Music Center, 215 Va. at 35, 205 S.E.2d at 678. Specifically, the estate alleges in its amended complaint that "[a]s a routine and regular part of his employment," Gibbs was onboard the Lewis and Clark during its construction.  In addition, the estate alleges that Gibbs was exposed to asbestos "[d]uring the course and scope of his employment."  Furthermore, the estate refers to the Navy as Gibbs' "employer" several times in its amended complaint.  In his deposition, Gibbs testified he was employed by the Navy and that while assigned to the Lewis and Clark he worked a "normal, 8:00 to 5:00, work day."

Because the facts and circumstances surrounding the relationship between Gibbs and the Navy establish that Gibbs provided services to the Navy in exchange for compensation, I would conclude that Gibbs was providing these services under a "contract of hire" within the meaning of the Act.  Although the estate contends that the General Assembly's omission of active duty members of the United States military from the definition of "employee" evidences an intention to exclude them from the Act, this contention ignores the Act's express language including persons under a "contract of hire" within the meaning of an

15

"employee."[6]  "Every person . . . in the service of another under any contract of hire" is an "employee" within the meaning of the Act unless otherwise excluded "in subdivision 2 of this definition."  Code § 65.2-101(1)(a).  Subdivision 2 does not exclude active duty military members or federal government employees, in general, from the definition of "employee."  See, e.g., McCotter, 849 F. Supp. at 447 (Virginia Workers' Compensation Act "does not exempt federal employees from its definition of 'employees'" or "from its coverage").[7]  Therefore, under the provisions of the Virginia Act, Gibbs was an employee of the Navy.  Consequently, his injury arose out of and in the course of his employment with the Navy.[8]

_____

[6] The Act includes as an "employee" several specific categories of persons.  See subsections 1(b)-(t) under definition of "employee" in Code § 65.2-101.  However, the Act also excludes specific categories of persons from the definition of "employee."  See subsections 2(a)-(n) under the definition of "employee" in Code § 65.2-101.  Members of the United States military are neither specifically included nor excluded under these provisions.

[7] Nor does federal law control what persons are "employees" within the meaning of the Virginia Act.  The meaning of "employee" under federal law varies depending on the legislation under consideration.  For example, it has been held that Title VII of the Civil Rights Act, 42 U.S.C § 2000e, while applicable to civil employees of military departments, does not apply to uniformed members of the armed forces.  Roper v. Department of Army, 832 F.2d 247, 248 (2d Cir. 1987).  However, the Federal Tort Claims Act, 28 U.S.C. § 2671 specifically defines "employee of the government" to include "members of the military or naval forces of the United States."

[8] The estate posits that Gibbs was not an employee of the Navy because his service to the Navy was not "the voluntary

16

C. Shipyard and Gibbs Were Statutory Co-employees

At the time Gibbs sustained the injury resulting in his death, Gibbs and the Shipyard were performing work for the Navy that was part of the Navy's trade, occupation, or business. Accordingly, Gibbs and the Shipyard were statutory co-employees under the Act.

Pursuant to Code § 65.2-302(A), a statutory employer is defined as

> any person (referred to in this section as "owner")
> [who] undertakes to perform or execute any work which
> is a part of his trade, business or occupation and
> contracts with any other person (referred to in this
> section as "subcontractor") for the execution or
> performance by or under such subcontractor of the whole
> or any part of the work undertaken by such owner.

When the owner of a project is a governmental entity, "any activity which the owner is authorized or required to do by law

---

'contract of hire' envisioned by the Act." Although the majority finds it unnecessary to determine whether Gibbs was an employee within the meaning of the Act, it adopts the estate's position in stating that because "[m]ilitary service has little in common with the employer-employee relationships of commerce and industry," "[i]t is difficult to imagine that the General Assembly intended to include it within the term 'contract of hire.' " However, the rationale for the majority's position – the military's rigorous training, strict discipline, hazardous duties – is not based on factors considered in determining the existence of an employment relationship. See, e.g., Stover, 221 Va. at 511, 272 S.E.2d at 42. Furthermore, the same can be said about specific categories of persons expressly included as employees under the Act such as members of the Virginia National Guard and the Virginia Naval Militia, who are subject to the call to federal active duty, as well as firefighters and police officers. See Code § 65.2-101.

or otherwise, is considered the trade, business, or occupation of the owner."  Nichols, 241 Va. at 521, 403 S.E.2d at 701.

Under 10 U.S.C. § 5062(d), "[t]he Navy shall develop aircraft, weapons, tactics, technique, organization, and equipment of naval combat and service elements." (emphasis added).  In addition, under 10 U.S.C. § 5013(b)(11), the Secretary of the Navy has authority to conduct "[t]he construction, outfitting, and repair of military equipment." The Navy contracted with the Shipyard for the construction and purchase of the Lewis and Clark, a nuclear submarine commissioned for its fleet.  Therefore, the Navy undertook to perform work (construction of the submarine) that was part of its trade, business or occupation (development and construction of military equipment) and contracted with the Shipyard for the execution of this work.  Code § 65.2-302(A).

At the time Gibbs was allegedly exposed to asbestos, he was stationed at the Shipyard to work, alongside Shipyard employees, onboard the Lewis and Clark during its construction to ready the submarine for its delivery and acceptance by the Navy. Therefore, Gibbs' injury was sustained when he and the Shipyard were "engaged in the trade, business, or occupation" of the Navy in the construction of the Lewis and Clark and, thus, "are

18

deemed to be statutory fellow employees."  Nichols, 241 Va. at 519, 403 S.E.2d at 700.[9]

### D. Conclusion

In sum, I would hold that the claim made by Gibbs' estate against the Shipyard is barred under the exclusivity provision of the Act because Gibbs and the Shipyard were statutory co-employees when Gibbs was allegedly exposed to asbestos in the course of his employment.

In analyzing this issue as being dependent on whether the Navy could be held liable for compensation under the Act, instead of whether Gibbs' injury arose out of and in the course of his employment with the Navy, I believe the majority has departed from this Court's precedent.  Furthermore, in doing so, the majority has adopted an approach that will deprive third parties who contract with the federal government the benefit of the exclusivity provision of the Act without any regard to whether the plaintiff's claim arose in the course of his employment, and despite the fact that such third parties would

---

[9] Citing language in Code § 65.2-302(A) requiring the owner of a project to pay any compensation "which he would have been liable to pay if the worker had been immediately employed by him," the majority concludes that the Navy was not the Shipyard's statutory employer because the Navy "would not in any circumstances have been liable to pay compensation under the Act."  However, this language governs the potential liability of the statutory employer.  It does not determine what persons meet the definition of statutory employer.

19

be entitled to such protection if they contracted with a private entity.

Accordingly, I would affirm the judgment of the circuit court.